CECOS INTERNATIONAL, INC., Appellee,

v.

SHANK, Director, et al., Appellants.

[Cite as *CECOS Internatl., Inc. v. Shank* (1991), 74 Ohio App.3d 43.]

Court of Appeals of Ohio,
Franklin County.

Nos. 89AP–1194 and 89AP–1199.

Decided May 9, 1991.

44

*Bricker & Eckler, Charles H. Waterman III, Randolph C. Wiseman* and *Frank L. Merrill,* for appellee.

*Lee I. Fisher,* Attorney General, *Paul D. Hancock* and *Christopher A. Walker,* for appellant Richard L. Shank, Director of Environmental Protection.

*Donald W. White,* Prosecuting Attorney; *Cogswell, Eggleston & Samuels, Stephen P. Samuels* and *Renee J. Houser,* Special Assistant Prosecuting Attorneys, for appellant Board of Commissioners of Clermont County.

RADCLIFFE, Judge.

Appellants appeal from an order of the Environmental Board of Review ("EBR") vacating a determination of the Director of Environmental Protection which denied an application by appellee seeking renewal, revision and modification of a permit to operate a hazardous waste treatment storage and disposal facility located in Clermont County. The separate appeals taken by the Director of Environmental Protection and the Board of Commissioners of Clermont County were consolidated in this court for our review.

Appellant Richard L. Shank is the Director of the Ohio Environmental Protection Agency ("Ohio EPA"). Pursuant to R.C. Chapter 3734, the director is charged with the responsibility of regulating and licensing hazardous waste facilities located in this state. Appellee, CECOS International, Inc. ("CECOS"), is the owner and operator of a hazardous waste storage, treatment and disposal facility located on Aber Road in Jackson Township, Clermont County, Ohio. The facility has been in operation since 1972 and was acquired by CECOS in 1983. The facility receives a variety of hazardous wastes, which it manages via landfilling and drum storage. CECOS operates the facility under an Ohio hazardous waste facility permit and was granted interim status approval under federal law because it was in operation prior to 1980. Intervening appellant Clermont County Board of Commissioners ("Clermont County") is the duly authorized legislative body governing the county in which the Aber Road facility is located.

The operation of hazardous waste storage, treatment and disposal facilities is governed by both federal and state law. The federal law, known as the Resource Conservation and Recovery Act of 1976 ("RCRA"), Sections 6901–6987, Title 42, U.S.Code:

" * * * was intended by Congress to establish a comprehensive set of regulations to govern the management of hazardous waste in this country. * * * In Sections 6921 through 6925, Title 42, U.S.Code, Congress directed the Administrator of the United States Environmental Protection Agency to establish criteria for the identification and listing of hazardous waste, to promulgate regulations governing generators and transporters of hazardous waste and owners and operators of facilities for the storage and disposal of hazardous waste, and to establish a permit system controlling the treatment, storage and disposal of hazardous waste.

"RCRA also provided for the implementation of state-level programs, to operate in lieu of the federal system. * * * " (Citation omitted.) *Youngstown Sheet & Tube Co. v. Maynard* (1984), 22 Ohio App.3d 3, 6, 22 OBR 37, 40, 488 N.E.2d 220, 224.

"R.C. Chapter 3734 was enacted in 1980 in response to the * * * [RCRA]. It was intended to establish a comprehensive waste management program for Ohio, which upon receiving approval of the United States Environmental Protection Agency, would operate in the state of Ohio in lieu of the federal legislation. * * * " (Citation omitted.) *Id.* at 5, 22 OBR at 38, 488 N.E.2d at 222.

When CECOS purchased the Aber Road facility in 1983, Ohio's hazardous waste program had not yet received authorization from the United States Environmental Protection Agency ("U.S. EPA") to operate in lieu of the federal program. Accordingly, the CECOS facility was operating under an interim status federal permit, known as a "part A" hazardous waste permit, see Section 6925(e), Title 42, U.S.Code, and in Ohio under a Hazardous Waste Facility Installation and Operation Permit issued in accordance with R.C. 3734.05.

Pursuant to the RCRA, the U.S. EPA on March 22, 1983, "called in" CECOS's permit application for purposes of issuing the permit required by Section 6925, Title 42, U.S.Code. This application, known as a "part B" application, was transmitted to the Ohio EPA for the purpose of determining whether the application was complete. Following numerous communications between the two agencies and CECOS, the Ohio EPA informed the U.S. EPA in October 1984 that it found the CECOS part B application to be complete.

Subsequently, in May 1985, the Ohio EPA called in the Ohio permit pursuant to R.C. 3937.05. The parties ultimately agreed in September 1986

that the part B application previously submitted to the U.S. EPA in September 1984 no longer adequately reflected the current operating conditions of the Aber Road facility. Accordingly, CECOS undertook to submit a new part B application, which application was submitted December 19, 1986.

Following review of this revised application, the U.S. EPA notified CECOS in July 1987 that the part B application contained approximately seven hundred twenty-three deficiencies, representing items which were either incomplete or inadequate. CECOS submitted a revised part B application in September 1987, which application was once again reviewed by the Ohio EPA and U.S. EPA. The revised application was found to contain three hundred seventy deficiencies. In April 1988, both the Ohio EPA and the U.S. EPA notified CECOS of their intent to deny the requested part B application. Both notices specified the federal and state regulatory and statutory provisions which the application either failed to address or did not address adequately. In response, CECOS supplemented its part B application in June 1988.

In the interim between April and June 1988, the Ohio EPA received numerous comments on its notice of intent to deny CECOS's part B application, which comments included those of Clermont County. The Ohio EPA prepared several documents which summarized its response to the comments submitted by the public as well as its response to the June 1988 supplementations made by CECOS to its part B application.

Thereafter, on September 8, 1988, the director notified CECOS that its permit renewal application had been denied. The director gave two reasons for denying the application. First, the director determined that the facility's history of noncompliance with R.C. Chapter 3734 demonstrated insufficient reliability, expertise and competency on the part of CECOS to operate the facility. Second, the director determined that CECOS failed to submit a complete and adequate permit application as required by Ohio Adm.Code 3745-50-40 and 3745-50-51. The director ordered CECOS to submit a closure plan for the facility within fifteen days of the issuance of the final order.

CECOS then filed its notice of appeal to the EBR from the action of the director on September 13, 1988, pursuant to R.C. 3734.09. Upon appeal, CECOS raised two issues, which issues are the sole issues before this court. Specifically, CECOS argued before EBR that its application was complete and that, because its application sought a modification to the existing permit, the director was statutorily required to submit the completed application to the Hazardous Waste Facility Board for its review. Because of its interest in the issue, Clermont County was allowed to intervene in the appeal on September

26, 1988.[1]

Finding the issue of whether the application was complete to be the threshold question before it, EBR conducted an evidentiary hearing on this issue from February 6, 1989 through February 14, 1989. Following the submission of post-hearing briefs by CECOS and the director, EBR issued its findings of fact, conclusions of law and final order on September 7, 1989. EBR concluded that the application was complete and that, therefore, the director lacked statutory authority to deny the application, but was required to submit the completed application to the Hazardous Waste Facility Board in accordance with R.C. 3734.05. EBR reversed the action of the director and ordered the director to forward CECOS's application to the Hazardous Waste Facility Board for further review.

The director and Clermont County now appeal and set forth the following assignments of error for our review:

Case Number 89AP–1194

"1. The Environmental Board of Review erred in determining that CECOS' part B application was complete.

"2. The Board erred in determining that the director lacked authority to deny CECOS' application for renewal and revision of its hazardous waste permit."

Case Number 89AP–1199

"1. The Environmental Board of Review erred in determining that the application submitted by CECOS was complete.

"2. The Environmental Board of Review erred in requiring the director to transmit an incomplete and inadequate application to the Hazardous Waste Facility Board."

Upon the director's motion for leave to consolidate the two appeals in this court, we granted the motion and allowed appellants to submit a single record, which contains over nine hundred documents including the twenty-one volume part B application submitted by CECOS.

Initially, this court observes that two different standards of review govern appeals taken pursuant to R.C. 3745.02 through 3745.06. In cases such as this, where the director has not held an evidentiary hearing prior to denying a permit, the EBR is required to conduct an evidentiary hearing.

---

1. Clermont County also filed a separate appeal from the director's order on October 24, 1988. The EBR dismissed that appeal as moot on December 20, 1989. Clermont County appealed the dismissal to this court. *Bd. of Commrs. of Clermont Cty. v. Shank* (1991), 74 Ohio App.3d 43, 598 N.E.2d 40.

R.C. 3745.05. The director's action must be affirmed by the EBR if such order is reasonable and lawful in light of the evidence adduced. *Citizens Committee v. Williams* (1977), 56 Ohio App.2d 61, 69, 10 O.O.3d 91, 96, 381 N.E.2d 661, 666. In *Citizens Committee, supra,* this court defined the terms unlawful and unreasonable as:

" 'Unlawful' means that which is not in accordance with law. * * *

" 'Unreasonable' means that which is not accordance with reason, or that which has no factual foundation. It is only where the board can properly find from the evidence that there is no valid factual foundation for the Director's action that such action can be found to be unreasonable. Accordingly, the ultimate factual issue to be determined by the board upon the *de novo* hearing is whether there is a valid factual foundation for the Director's action and not whether the Director's action is the best or most appropriate action, nor whether the board would have taken the same action." *Id.* at 70, 10 O.O.3d at 96–97, 381 N.E.2d at 667.

Upon further appeal to this court, a different standard of review applies. Specifically, this court must affirm the order of the EBR if, upon consideration of the entire record, such order is supported by reliable, probative and substantial evidence and is in accordance with law. R.C. 3745.06. Thus, to the extent the EBR found that the director's decision denying the CECOS permit was unreasonable or unlawful, this court is required to affirm that finding if it is supported by reliable, probative and substantial evidence and is in accordance with law. Cf. *Fairfield Sanitary Landfill, Inc. v. Fairfield Cty. Dist. Bd. of Health* (1990), 68 Ohio App.3d 761, 589 N.E.2d 1334.

Here, EBR determined that the action of the director in denying CECOS's permit was unreasonable and unlawful. More particularly, the EBR found that the evidence did not support the director's determination that the application was incomplete. Having determined that the application was complete, EBR then found that the director's action in denying the application without first submitting the application to the Hazardous Waste Facility Board was contrary to law.

Under their initial assignments of error, both appellants contend that EBR erred in vacating the director's determination that CECOS's part B application was incomplete. Both appellants begin their argument by noting that R.C. 3734.05(H)(1) requires a "complete" application before such application may be transmitted to the Hazardous Waste Facility Board. Since the term "complete" is not defined by statute, appellants rely upon the definition of "complete" set forth in Ohio Adm.Code 3745–50–41(C), which states that an application is complete when it is "complete to [the director's] satisfaction."

Accordingly, appellants conclude that where information required by the director for an application is not furnished, that application is incomplete.

Three reasons are given to support this conclusion. First, appellants contend that due to the site-specific nature of a part B application, Ohio Adm.Code 3745–50–44 does not list all of the information required for an application, but only provides an outline which the director may supplement based upon the needs of a particular site. Second, appellants maintain that the definition of "complete" contemplates a determination by the director as to whether the information supplied by the applicant is adequate to facilitate a full review by the Hazardous Waste Facility Board. Finally, appellants contend that the director's definition of "complete" is entitled to due deference.

Appellants also argue under their initial assignment of error that EBR's decision as to whether the application was complete is contrary to the weight of the evidence. It is appellants' position that many of the items required by Ohio Adm.Code 3745–50–44 were missing. For example, appellants contend that because Ohio Adm.Code 3745–50–43(A)(5) requires a photograph of the site as a prerequisite to the issuance of a part A permit, CECOS's failure to include such photograph rendered their part B application incomplete. Appellants also maintain that CECOS failed to supply the information required by Ohio Adm.Code 3745–50–44(C)(2). Finally, appellants contend that EBR's determination was contrary to the weight of the evidence since many of the items supplied by CECOS were inadequate to allow the director to determine whether the standards for hazardous waste facilities had been met.

As the third branch of the their first assignment of error, appellants contend that EBR also erred in giving any significance to the director's issuance of a notice of intent to deny as evidence that the application was complete. Appellants contend that R.C. 3734.05(H) allows the director to deny a permit if the owner or operator fails to submit an application as required.

Clermont County also contends in its first assignment of error that the application was incomplete because CECOS failed to submit the disclosure statement required by R.C. 3734.42(A)(1). It is Clermont County's position that the June 1988 amendment to the hazardous waste law required applicants to submit disclosure statements, a requirement CECOS did not meet.

Initially, this court is called upon to review EBR's conclusion that the director's definition of complete was unreasonable and unlawful. R.C. 3734.-05(H)(1) requires hazardous waste facility permit holders who wish to renew their permit to " * * * submit a completed application for an installation and operation permit renewal and any necessary accompanying general plans, detail plans, specifications, and such information as the director may require

to the director no later than one hundred eighty days prior to the expiration date of the existing permit * * *." Although the Revised Code does not define what constitutes a "completed application," Ohio Adm.Code 3745–50–41(C) specifies that in cases such as this, where the permit applicant is seeking a modification to an existing hazardous waste facility, the director is prohibited from transmitting to the Hazardous Waste Facility Board an incomplete permit application. This section defines a completed permit application as:

"(1) A permit application is complete:

"(a) When the director receives an application form and any supplemental information which are complete to his satisfaction * * *."

This definition of a completed application is consistent with its federal counterpart. See Section 270.10(c), Title 40, C.F.R.

■ In reviewing the director's determination that appellee's application was incomplete, EBR did not specifically define what constitutes a "completed application." However, EBR did find that appellee's application was complete because it addressed all statutory and regulatory requirements. Findings of Fact, Conclusions of Law and Final Order (Sept. 7, 1989), paragraphs seventeen and twenty, at 5 and 6. In so finding, EBR inferred that an application for a part B permit is complete if the applicant supplies all of the information required by both statute and regulation. We believe this definition is too restrictive in light of the various statutory and regulatory requirements imposed upon hazardous waste facility owners and operators.

■ This court finds merit in the argument advanced by the director regarding the definition of a "completed application." As the director points out, R.C. 3745.05(H)(1) specifically empowers the director to request additional information with respect to a specific hazardous waste site. Although Ohio Adm.Code 3745–50–44 contains a plethora of information required of a part B applicant, that rule also contemplates that the director will require additional information. See Ohio Adm.Code 3745–50–44(A)(20) and (C)(9)(e). Moreover, even the specific provisions of this rule are not so precise as to define for the applicant the specificity which the director may require for proper review of the application.

For example, Ohio Adm.Code 3745–50–44(C)(2)(d), requires the applicant to provide a "* * * diagram of piping, instrumentation, and process flow for each tank system." The regulation does not specify whether the diagram of the piping is to be drawn to scale, or whether the diagram of the piping should specify the type of connector used to connect the pipes to one another or to the tanks. Such information could well be relevant to the director's review of a particular application given the nature of the site and the type of materials

to be handled at the site. The director must be free to amplify the statutory and regulatory requirements imposed upon part B applicants as the need arises. Thus, the director does have the authority to require an applicant to amplify the information specified in Ohio Adm.Code 3745–50–44 as the exigencies of a particular site may require. Accordingly, an application for renewal of a permit to operate a hazardous waste facility is complete to the director's satisfaction under R.C. 3734.05(H)(1) when all statutory and regulatory requirements, as amplified by the director, have been fulfilled.

We reject any reliance upon the director's decision to deny the requested permit as evidence that the application was complete. Although CECOS contends that the director can only issue a *draft* action pursuant to R.C. 3734.05(H) after he has received a completed application, as opposed to the issuance of a *proposed* action pursuant to R.C. 3745.07, this court finds no merit in such argument. Cf. *Cain Park Apartments v. Nied* (June 25, 1981), Franklin App. Nos. 80AP–817, 852, 867, 868 and 869, unreported, 1981 WL 3294. The essence of this argument is that because the director proceeded in accordance with R.C. 3734.05(H)(1) as if he had received a completed application, the director is estopped from denying that appellee submitted a "completed application."

However, it well established that estoppel does not operate against the state. *Sun Refining & Marketing Co. v. Brennan* (1987), 31 Ohio St.3d 306, 307, 31 OBR 584, 585, 511 N.E.2d 112, 113. Moreover, EBR's conclusion that the director processed the application as if CECOS had submitted a completed application is not supported by reliable, probative or substantial evidence. The record demonstrates that the notice of deficiency issued in July 1987 noted approximately seven hundred items which CECOS either failed to include in its application or failed to address in sufficient detail. At no time subsequent to the parties' 1986 agreement that CECOS would submit a revised application did the director indicate that he considered the application complete. Accordingly, EBR erred in concluding otherwise.

As to the argument made by Clermont County that the application was incomplete because CECOS failed to submit a disclosure statement pursuant to R.C. 3734.42(A)(1), this court observes that Clermont County raised this issue November 28, 1988 by way of a "Notice of Additional Issues." However, Clermont County presented no argument as to this issue either at the February 1989 hearing or in its "Proposed Findings of Fact and Conclusions of Law." EBR expressed no opinion as to this issue in its finding or order. We find Clermont County waived any error as to the effect of R.C. 3734.42(A)(1).

■ The final and determinative issue raised by appellants in their initial assignment of error concerns EBR's finding that the application was complete. For the reasons which follow, the court concludes this finding is supported by substantial, reliable and probative evidence, despite the utilization of a standard for "completeness" which was too restrictive.

■ Initially, this court observes that the July 22, 1987 notice of deficiency sent by the U.S. EPA, acting on behalf of the Ohio EPA, to CECOS noted more than seven hundred deficiencies in the application. The director indicates in his brief before this court that approximately two hundred of these items were deemed deficient because they were incomplete. The amended application submitted by CECOS subsequent to the notice of deficiency addressed many areas of deficiency but still contained one hundred fifty items which the director believed were incomplete as evidenced by the checklist of items attached to the director's notice of intent to deny the application. Following CECOS's supplementation in June 1988 of its application, the director indicated in his responsiveness summary that approximately forty items were still incomplete. However, upon review by this court of those items, we are compelled to conclude that EBR did not err in finding that the application submitted by CECOS was complete.[2]

■ While the director has the authority to direct a permit applicant to submit additional or more detailed information in order to comply with the statutory requirement that a "completed application" be submitted, it is the director's obligation to specify the information sought. An applicant cannot be faulted for attempting to comply with the director's request for additional information which is nonspecific or ambiguous.

For example, CECOS provided much of the information identified in the responsiveness summary issued by the director specifying the reasons CECOS' permit was denied, but not to the level of specificity desired by the director. However, the director's request for this information often lacked specificity.

---

2. Although Clermont County questioned the validity of the June 1988 supplemental filings, since the public had no opportunity to comment on these filings, Clermont County failed to pursue this issue before EBR. After raising the issue in its November 28, 1988 "Notice of Additional Issues," Clermont County presented no argument at the hearing as to the validity of the supplemental filings. Moreover, Clermont County addressed the June 1988 filings in its "Proposed Findings of Fact and Conclusions of Law."

Even assuming, however, that this issue was properly preserved, we find no error occasioned by the director's consideration of the June 1988 filings. The director determined only that the application was incomplete. No determination was made as to the merits of the application. In the event the director ultimately determines to deny or renew the permit on the merits of the application, such determination would clearly be subject to the public comment requirements of R.C. 3734.05(H)(1) and Ohio Adm.Code 3745–50–40(E)(6).

One instance of this problem is typified on pages 93–94 of the responsiveness summary under paragraph seven. The director indicated in his notice of intent to deny that CECOS had failed to demonstrate that required training would be provided to persons filling positions listed under Ohio Adm.Code 3745–54–16(D)(1). Ohio Adm.Code 3745–54–16(D)(1) requires owners or operators of hazardous waste facilities to maintain at the facility the job titles for each position at the facility related to the management of hazardous waste. In responding to the director's notice of intent to deny, CECOS supplied a five-page list of job titles, subject matter in which the particular employees would be trained and the subject matters on which those employees would receive annual update training. The director's response to the supplementation was that the "[i]nformation has not been provided. No provisions for contractor personnel who work at the site on a daily basis." Quite clearly, the director's request for this information did not specify that CECOS was to provide training information on contractor personnel working at the site on a daily basis. Although the terms "personnel" and "facility personnel" are defined in Ohio Adm.Code 3745–50–10(A)(82), this section does not clearly define these terms to include contractor personnel. While the director is empowered to request such information of an applicant, it is the director who must seasonably notify the applicant of the information desired so as to ensure compliance.

Another example can be found on page 77 of the responsive summary at paragraph one, regarding the provision in the application for contingency planning in the event of a breach of the facility's hazardous waste management systems. The director requested that CECOS provide " * * * a general description of wastes managed and hazards presented which will be useful to out-of-house response agencies." CECOS supplied a description of waste types and associated hazards. In responding, the director acknowledged that the requested information had been provided but criticized CECOS's failure to provide a more specific description of the hazard presented by the various wastes to be managed at the facility.

If the director desired specific information as to the type of toxic hazard presented by particular wastes, the director should have asked for such information rather than request a general description of the wastes and associated hazards. The submission of a completed application should not require an applicant to guess what information is being requested. To the extent the director intends to utilize his power to require an applicant to submit additional information, the director should specify the precise and particular information sought to enable an applicant to comply. The application process should not be utilized, as it appears to have been utilized in this

case, as a method for denying a permit. Rather, it is the director's function to ensure, rather than frustrate, compliance with the statutory requirement that an applicant submit a "completed application."

This court's extensive review of the application submitted by CECOS supports EBR's determination that CECOS submitted a completed application as requested by the director. While there is evidence that CECOS failed to provide certain information requested by the director, the director has not indicated why this evidence is so significant as to warrant reversal of the EBR decision. See *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267. For this reason, although EBR applied an erroneous definition of "completed application," and erred in giving any significance to the process utilized by the director in denying the permit as evidence that the application was complete, there is nevertheless substantial, reliable and probative evidence in the record to support EBR's determination that the application was complete. Appellants' first assignments of error are overruled.

Appellants contend by way of their second assignments of error that the EBR also erred in concluding that the director lacked authority to deny the completed application. EBR concluded that the director should have forwarded such application to the Hazardous Waste Facility Board. It is appellants' position that a permit renewal application which also contains a request to modify an existing facility does not divest the director of all authority to review that portion of an application which does not address modification of the facility. More particularly, both appellants maintain that because R.C. 3734.05 offers no specific procedure to be followed in a case where an applicant seeking renewal of an existing permit also seeks to revise and modify the facility, EBR is required to defer to the director's determination as to the appropriate procedure to be followed in such a case.

The director contends that CECOS's inability to provide a completed application and its history of noncompliance mandate that the director act immediately upon the application and deny it without first transmitting the application to the Hazardous Waste Facility Board. Clermont County suggests that EBR's interpretation of the procedures to be followed for processing renewal applications which also request a modification will promote forum shopping by allowing an applicant to avoid the director's immediate review by seeking a modification.

Initially, this court is compelled to note that the question presented by appellants' second assignments of error is one of statutory construction. The narrow question presented concerns the proper procedure to be followed by the director when an applicant submits a renewal application containing a

request to modify an existing hazardous waste facility. Accordingly, to the extent the statute sets forth a procedure to be followed in such cases, appellants' arguments regarding public policy are simply inapposite. Rather, the procedure to be followed is the one prescribed by the General Assembly.

 The portions of R.C. 3734.05(H) pertinent to this appeal provide as follows:

"(3) An installation and operation permit renewal application submitted to the director that also contains or would constitute a revision application shall be acted upon by the director in accordance with division (I) of this section in the same manner as a revision application. In approving or disapproving the renewal portion of a permit renewal application containing a revision application, the director shall apply the criteria established under division (H)(2) of this section.

"(4) An installation and operation permit renewal application submitted to the director that also contains or would constitute a modification application shall be acted upon by the hazardous waste facility board in accordance with division (H) [*sic*] of this section in the same manner as a modification application.[3]

"(5) An application for renewal or revision of a permit that does not contain an application for a modification shall not be subject to division (D) of this section."

The provision of R.C. 3734.05(I) which specifies the procedure to be followed by the Hazardous Waste Facility Board in reviewing an application for a modification is set forth as follows:

"(4)(a) The hazardous waste facility board shall approve or disapprove an application for a modification, *or that portion of a permit renewal application that constitutes a modification application,* of a hazardous waste facility installation and operation permit in accordance with division (D) of this section. In approving or disapproving the renewal portion of a permit renewal application containing a modification application as provided division (H)(4) of this section, the board shall apply the criteria established under division (H)(2) of this section. *No aspect of the permitted facility or its*

---

**3.** Although this paragraph refers to division (H), a review of the statutory history indicates that the General Assembly, in amending R.C. 3734.05 in 1988, relettered all of the divisions then in existence, but failed to reletter the reference to division (H) made in R.C. 3734.-05(H)(4). See Section 1, Am.Sub.H.B. No. 592 (142 Ohio Laws, Part III, 4418, 4471–4487). Since the predecessor to R.C. 3734.05(H)(4) was denominated R.C. 3734.05(G)(4), it is believed that the reference in that section to division (H) should have been changed to division (I) when the section was relettered from division (G) to division (H).

*operations that is not being modified shall be subject to review by the board under division (D) of this section.*

*" * * ***

"(c) If the director determines that all or part of an application for revision constitutes an application for modification or if the director determines that all or part of an application for modification constitutes an application for revision, he shall so inform the applicant and treat the application accordingly." (Emphasis added.)

The director, on April 4, 1988, notified CECOS that its application to renew its Ohio Hazardous Waste Installation and Operation Permit had been classified as a revision/modification. The director set forth the portions of the application which constituted a renewal of its existing permit, the portions that contained revisions to its existing permit, and the portions which sought modification of the existing facility. The director identified six items which comprised the modification.

 In light of these facts, this court concludes that the director, upon finding the application to be complete, was required to send the portions constituting a modification to the Hazardous Waste Facility Board. R.C. 3734.05(I)(4)(a) clearly specifies that any aspect of a facility being operated under an existing permit which is not being modified is not subject to review by the Hazardous Waste Facility Board. See, also, R.C. 3734.05(H)(5). Contrary to EBR's interpretation of the statute, R.C. 3734.05 does not divest the director of all authority to review a permit renewal application which also seeks a modification. Rather, the statute merely divests the director of authority to review that portion of a renewal permit which constitutes a modification. Construing R.C. 3734.05(H) and 3734.05(I) so as to give effect to all words utilized in these sections indicates that the Hazardous Waste Facility Board has jurisdiction only over that portion of a permit renewal application which requests modification. Such review by the Hazardous Waste Facility Board is to be conducted in accordance with R.C. 3734.05(D) and the provisions of R.C. 3734.05(H)(2). The provisions of R.C. 3734.05(H)(2) and 3734.05(D)(6) are not mutually exclusive, but are interrelated. R.C. 3734.05(D)(6) mirrors R.C. 3734.05(H)(2) by calling upon the Hazardous Waste Facility Board to disapprove an application for a modification submitted by an existing permit holder if the facility has a history of noncompliance which demonstrates insufficient operator reliability, expertise or competence.

 Having concluded that the EBR erred in determining that the director lacked authority to review those portions of the application which did not seek a modification to the existing facility, this court notes that the

provisions of R.C. 3734.05(H) and (I) are jurisdictional. These sections may not, as the director suggests, be construed to achieve a particular policy objective. Rather, the statute clearly restricts the director's authority to act upon any portion of a permit renewal which contains a modification request. The statute does, however, give the director discretion to determine those portions of an application which seek a modification or those which seek a revision. R.C. 3734.05(I)(4)(c). Cf. *Northern Ohioans Protecting the Environment v. Shank* (1988), 52 Ohio App.3d 41, 43–47, 557 N.E.2d 126, 129–133. Since the director has already exercised this discretion by identifying six items in the CECOS application which constitute the modification to its existing facility, it is those portions of the application which the director is required to transmit to the Hazardous Waste Facility Board.

For all of the foregoing reasons, this court finds merit in appellants' second assignments of error and sustains them. Accordingly, the director has the authority to review those portions of the application which constitute a renewal/revision to its existing facility. The portion of the application requesting a modification is to be submitted to the Hazardous Waste Facility Board.

Appellants' first assignments of error having been overruled and appellants' second assignments of error having been sustained, the order of the EBR is affirmed in part and reversed in part and this matter is remanded to that body for further proceedings consistent with this opinion.

*Order affirmed in part*
*reversed in part,*
*and cause remanded.*

PEGGY BRYANT and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, sitting and hearing the appeal pursuant to active duty prior to his retirement, and assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution, subsequent to his retirement.

GERALD E. RADCLIFFE, J., of the Ross County Common Pleas Court, sitting by assignment.