OPINION
{¶ 1} Morrow County District Board of Health ("board"), appellant, appeals two orders of the Environmental Review Appeals Commission ("ERAC"), in which ERAC vacated the board's orders that denied the applications for construction and demolition debris ("CDD") facility operating licenses submitted by Harmony Environmental Ltd. ("Harmony"), and Washington Environmental Ltd. ("Washington"), appellees.
 {¶ 2} In August 2003, Harmony and Washington, which are wholly owned subsidiaries of CDD Acquisitions, Inc., submitted separate applications to the board for licenses to operate CDD landfills in Morrow County, Ohio. As the procedural histories and orders of ERAC related to these two applications are virtually identical for purposes of this consolidated appeal, we will hereafter refer to Harmony and Washington as "H W." In August, September, and October 2004, H W submitted several revisions of and supplements to the original applications. On December 18, 2003, the board issued notice of deficiency letters to H W, pursuant to Ohio Adm. Code 3745-37-02(A)(2), indicating that the applications were incomplete because they did not include a letter from the local fire department or copies of applicable Ohio Environmental Protection Agency permits. In January 2004, H W submitted additional information to the board addressing the two deficiencies. The board subsequently notified H W that the CDD applications were accepted as complete.
 {¶ 3} Hearings on the applications were held on February 23, 2004, after which the board denied H's W's applications. On February 27, 2004, the board issued its written orders denying H's W's applications.
 {¶ 4} H W appealed the board's orders to ERAC. After denying H's W's motions for de novo review, ERAC issued its final orders on November 18 and December 16, 2004, based upon a consideration of the record, briefing by the parties, and oral argument. In finding the board erred in denying H's W's applications, ERAC found: (1) the board improperly determined that three violations regarding another landfill, which was owned by one of the owners of the proposed facilities in the current case, constituted substantial non-compliance under Ohio Adm. Code3745-37-03(C)(3) so as to preclude the issuing of licenses for the facilities in the present case; and (2) the board improperly addressed the license applications because they were incomplete under Ohio Adm. Code 3745-37-02(A)(2). The board appealed ERAC's orders to this court, and we consolidated the appeals. The board asserts the following two assignments of error:
I. The Environmental Review Appeals Commission erred as a matter of law in finding that the Appellant-Appellee's application for a construction and demolition debris facility license was "incomplete" pursuant to OAC 3745-37-02(A)(2).
II. The Environmental Review Appeals Commission's conclusion that the Appellant-Appellee's application for a construction and demolition debris facility license was "incomplete" pursuant to OAC 3745-37-02(A)(2) is not supported by reliable, probative and substantial evidence.
 {¶ 5} We will address the board's two assignments of error together, as they are related. The board argues in its first assignment of error that ERAC erred in finding that H's W's applications for a CDD facility license were incomplete, pursuant to Ohio Adm. Code3745-37-02(A)(2). The board argues in its second assignment of error that ERAC's conclusion that H's W's applications were incomplete, pursuant to Ohio Adm. Code 3745-37-02(A)(2), is not supported by reliable, probative, and substantial evidence.
 {¶ 6} This court is charged with determining whether ERAC's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Red Hill Farm Trust v. Schregardus (1995),102 Ohio App.3d 90, 95; R.C. 3745.06. Reliable evidence is evidence which can be trusted. Our Place, Inc. v. Ohio Liquor Control Comm.
(1992), 63 Ohio St.3d 570, 571. In order for evidence to be reliable, there must be a reasonable probability that it is true. Id. Probative evidence is evidence that tends to prove the issue in question, while substantial evidence is evidence that carries weight, or evidence that has importance and value. Id.
 {¶ 7} In order to determine whether an administrative order is supported by reliable, probative, and substantial evidence, we must weigh and evaluate the credibility of the evidence presented to ERAC. Univ. ofCincinnati v. Conrad (1980), 63 Ohio St.2d 108. In Andrews v. Bd. ofLiquor Control (1955), 164 Ohio St. 275, the Ohio Supreme Court acknowledged that determining whether an agency order is properly supported is essentially a question of the absence or presence of the requisite quantum of evidence. Id. at paragraph one of the syllabus;Univ. of Cincinnati, at 110-111. The court further explained that this inevitably involves a consideration of the evidence and, to a limited extent, would permit a substitution of judgment by the reviewing court. Id.
 {¶ 8} However, the General Assembly created administrative bodies to facilitate certain areas of the law by placing the administration of those areas before boards or commissions composed of individuals who possess special expertise. See Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, paragraph one of the syllabus. Accordingly, the courts should give due deference to the administrative interpretation of rules and regulations, as well as the administrative resolution of evidentiary conflicts. See Univ. of Cincinnati, at 111.
 {¶ 9} In the present case, there is only one issue for this court to determine: Was there reliable, probative, and substantial evidence to support ERAC's conclusion that H's W's applications for CDD facility licenses were incomplete? ERAC based its finding of incompleteness largely upon Ohio Adm. Code 3745-37-02(A)(2) and (A)(3), which provide, in pertinent part:
(2) An incomplete application shall not be considered. Within * * * sixty days in the case of an incomplete construction and demolition debris facility license application, the applicant shall be notified of the nature of the deficiency and of refusal by * * * the board of health to consider the application until the deficiency is rectified and the application completed; and
(3) For construction and demolition debris facilities, if the licensing authority determines that information in addition to that required by this rule is necessary to determine whether the application satisfies the requirements of Chapters 3745-400 and 3745-37 of the Administrative Code, the license applicant shall supply such information as a precondition to further consideration of the license application.
ERAC found that Ohio Adm. Code 3745-37-02(A)(2) and (A)(3) make it clear that the decision whether to issue an operating license for a CDD facility should be based upon the merits of a complete application and not on technical deficiencies in the application or upon an application that is too inadequate in content and scope to allow the agency to reach an informed decision. ERAC then found it was clear from the record that, at the time of the board's review, H's W's applications were incomplete and should not have been considered, citing certain testimony of the board's own witness, Linda Aller. ERAC also found that the board failed to follow the clear mandate of Ohio Adm. Code 3745-37-02(A)(2) to inform H W of the deficiencies in their applications.
 {¶ 10} The board first asserts that ERAC's conclusions were contrary to this court's decision in CECOS Internatl., Inc. v. Shank (1991),74 Ohio App.3d 43, which ERAC cited in support of its order. In CECOSInternatl., the Environmental Board of Review ("EBR") (now known as ERAC) addressed whether an application to the Hazardous Waste Facilities Board was complete. In finding that the application was complete, the EBR made the following findings in its underlying order:
3. The mere fact that the Director or staff of the Ohio EPA does not agree with the information or the fact that the information submitted may not be adequate to demonstrate that the applicant is either in compliance or entitled to the permit applied for, is not, in itself, determinative of whether the application as submitted is complete.
4. An application will be deemed to be complete when it is determined that all the statutorily and regulatorily enumerated and mandatory components of the application have been reasonably and fully answered, submitted or responded to by the applicant and that any required attachments, exhibits and appropriate data have been included. The fact that the application may ultimately be denied by the reviewing authority on the basis of the quality of the information contained in the application or that the OEPA would want other information, is not necessarily relevant in determining completeness.
5. The record in the present case demonstrates that while the Director and the employees of the Ohio EPA did not agree with portions of the material submitted by Appellant with its application and in support of it, the essential statutory and regulatory requirements of the application had been met and fulfilled. The record demonstrates that the Director had in the application and its voluminous attachments and exhibits responses to all aspects of the statutes and regulations controlling applications. While there were vast differences of opinion regarding the quality of the information and while a permit might ultimately be granted or denied based on the quality of the information submitted, all areas of the application had been reasonably addressed by Appellant. On appeal, this court in CECOS Internatl. affirmed the EBR's order and found the application was complete.
 {¶ 11} In the present case, ERAC cited the fourth paragraph from the EBR's order in CECOS Internatl. in finding that it was clear from the record that, at the time of the board's review, H's W's applications were incomplete and should not have been considered. In support of this determination, ERAC cited the following testimony of the board's witness, Linda Aller, the executive vice-president of Bennett and William Environmental Consultants:
In my professional opinion [the application] is not complete enough to determine whether or not there are the [sic], for example, uppermost aquifer is adequately characterized among other things.
 {¶ 12} As the board points out, paragraphs three, four, and five fromCECOS Internatl. draw a distinction between the completeness of an application versus the quality of the information included in the application. However, we agree with ERAC that Aller's testimony demonstrates that H's W's applications were incomplete as contemplated by CECOS Internatl. Although we find Aller's above-quoted testimony competent and credible on this point, the rest of Aller's testimony is also peppered with indications that her inability to render an opinion was not due to the quality of the information available but to the failure of H W to fully complete their applications. With regard to the aquifer issues, Aller testified several times that the board's ability to understand what was happening with the underlying soil at the sites was hampered by a lack of information included in the applications. Aller stated that there were residences near the subject properties that used water wells, but there was no information as to where their water supply came from, which may be helpful in defining the uppermost aquifer and determining whether the uppermost aquifer is sand, gravel, or rock. She also stated that it was possible that the uppermost aquifer was different across the sites, but "there [were] not updates * * * provided here in order to make that determination." Further, she testified that "[t]he [Ohio Administrative] Code clearly states that the criteria are to clearly and adequately convey the nature of hydrogeology beneath the site," but that the applications failed to do so, stating "I think there [are] several questions that would still need to be answered" on this issue. In addition, when asked whether she was able to make a determination whether the facilities were in a flood plain, she responded that "[t]he application does include a map, but the map includes no legends. It is very difficult to tell whether or not it is within a one hundred year flood plain because there is no legend."
 {¶ 13} This testimony supports ERAC's determination that H's W's applications were incomplete as contemplated by the EBR in CECOSInternatl. Paragraph four from the underlying order in CECOS Internatl.
indicates that an application is only complete when "all the statutorily and regulatorily enumerated and mandatory components of the application have been reasonably and fully answered." As to the hydrogeology of the sites, Ohio Adm. Code 3745-400-09(C)(1) requires the site characterization to be documented in a narrative report using maps and cross sections that clearly convey the nature of the site and the hydrogeology beneath the facility. If a report does not clearly convey the nature of the hydrogeology beneath the facility, then an application cannot be said to have fully answered all the regulatorily enumerated components, as required of a completed application pursuant to paragraph four of CECOS Internatl. Thus, in the present case, because Aller testified, in no uncertain terms, that the applications did not clearly convey the underlying hydrogeology for several reasons and in several respects, the application cannot be considered complete.
 {¶ 14} Similarly, Ohio Adm. Code 3745-400-09(C)(4)(a) requires the application to show where the facility is located with respect to the 100-year flood plain of a watercourse. Aller testified she could not determine whether the facilities were in a flood plain because the applications did not include a legend for the map. If the applications in the present case did not show the location of the 100-year flood plain, as Aller contended, then the applications could not have "fully answered" "all the statutorily and regulatorily enumerated components," as required of a completed application by the EBR's order in CECOS Internatl.
Likewise, Ohio Adm. Code 3745-400-09(C)(5) requires the application to include a description of the stratigraphic units from the ground surface down to the uppermost aquifer system, and Aller testified that the applications did not fully define the uppermost aquifer or fully describe the conditions down to the uppermost aquifer system. Thus, the applications could not have fully answered the enumerated requirements of Ohio Adm. Code 3745-400-09(C)(5). Accordingly, none of these issues that were regulatorily required to be addressed were "fully answered."
 {¶ 15} The applications were also not complete because they did not include the "appropriate data," as required of complete applications, pursuant to paragraph four of the order in CECOS Internatl. Aller testified that she questioned the permeability numbers presented in the applications because they were obtained by testing in a laboratory and not in situ, and the applications provided only the vertical permeability but not the horizontal permeability of the underlying ground. Therefore, at least according to Aller, the applications did not contain the "appropriate data" and, thus, could not be considered complete.
 {¶ 16} The board contends the applications were complete because they went beyond what was required by the regulations, citing Aller's testimony that there were 50 percent more soil borings completed than required. However, Aller testified that the requirement was a minimum requirement, and "[t]he [Ohio Administrative] Code clearly states that the criteria are to clearly and adequately convey the nature of hydrogeology beneath the site," but the applications lack information to determine the nature of the hydrogeology. She also stated that she believed there were additional questions raised by the borings that needed to be answered. Thus, although the number of borings may have been more than the required minimum, the applications were still incomplete because they failed to fully convey the nature of the hydrogeology as required by the regulation. Therefore, we find the board's argument, in this respect, unpersuasive.
 {¶ 17} We also note the board contends that paragraphs three and four from CECOS Internatl. specifically prohibited ERAC from basing its incompleteness determinations upon either of the two following grounds: (1) the information submitted by H W was inadequate; or (2) the board's expressed desire for other information. However, we have already found above that the applications were incomplete because they did not fully answer the regulatorily required components, not based upon either of the two above grounds. Notwithstanding, a careful reading of the pertinent paragraphs from CECOS Internatl. reveals that paragraph three merely specifies that the failure to include adequate information is not determinative "in itself" of completeness, and paragraph four indicates only that the administrative body's want for other information is "not necessarily" relevant to the issue of completeness. Thus, even if ERAC had based its incompleteness determination in part upon the lack of adequate information or the board's want for other information, paragraphs three and four from CECOS Internatl. would not act as a total bar to such.
 {¶ 18} The board also argues that ERAC erred in finding Ohio Adm. Code3745-37-02(A)(3) created a duty upon the board to seek "information in addition to" the rule when the board never found that any information in addition to the rule was necessary for a determination of the present applications. However, we find no place in ERAC's orders in which ERAC cited to Ohio Adm. Code 3745-37-02(A)(3) for the proposition the board claims. The only citation to subsection (A)(3) was a general reference to it in concluding that subsections (A)(2) and (A)(3) together contemplate that a determination on a CDD application should be based upon the merits of a complete application and not on technical difficulties or inadequate information. Therefore, as we fail to see where the board relied upon subsection (A)(3) for the proposition cited, the board's argument in this respect is without merit.
 {¶ 19} The board next argues that ERAC erred in finding that it violated Ohio Adm. Code 3745-37-02(A)(2) when it failed to inform H W of any basis for believing the applications should be denied. The board contends that the plain language of subsection (A)(2) does not permit it to consider the merits of an application until the application is complete. However, nowhere in ERAC's orders does ERAC indicate that the board should have informed H W of "any" basis it had for believing the applications should be denied, particularly any basis related to the actual merits of the applications. Rather, ERAC found that the board should have apprised H W of the portions of their applications that did not fully answer the necessary regulatory components. Because Ohio Adm. Code 3745-37-02(A)(2) requires the board to inform the applicants of any deficiencies in their applications before considering them, we find ERAC did not place any duty upon the board that subsection (A)(2) did not already explicitly delineate.
 {¶ 20} The board also contends that H W waived any argument regarding an incomplete application because at no time did H W raise the issue before ERAC that their applications were incomplete. However, the board's contentions are plainly contradicted by H's W's notices of appeal to ERAC, which included the following contentions:
2. The Board acted unreasonably/unlawfully in denying the operating license on grounds which are irrelevant to the criteria for granting or denying such operating licenses[.]
3. The Board acted unreasonably/unlawfully in denying the operating license on the grounds that the applicant failed to provide necessary information when the Board had certified the Appellant's license application as complete, and never requested any additional information as authorized under OAC 3745-37-02(A)(3)[.]
* * *
9. The Board acted unlawfully/unreasonably in secretly employing an environmental consulting firm, * * * which the Board used to secretly gather alleged deficiencies about Appellant's license application, particularly, where the Board then ambushed the license applicant * * * with its secretly gathered, and absolutely undisclosed, alleged deficiencies. The unreasonable nature of the Board's action was compounded by the fact that the undisclosed, alleged deficiencies, found by the Board's environmental consultant, resulted in a denial based upon a finding that the Appellant had presented inadequate, incomplete, and otherwise insufficient information in its license application, even though the Board had previously certified the Appellant's license application as complete, and thereafter, never requested the Appellant to provide any additional information pursuant to OAC 3745-37-02(A)(3).
Although H W did not cite Ohio Adm. Code 3745-37-02(A)(2), a specific citation to such was not necessary. It was sufficient that H W raised the issue of completeness. Therefore, the board's argument in this respect is without merit.
 {¶ 21} In sum, we find there was reliable, probative, and substantial evidence to support ERAC's conclusion that H's W's applications were incomplete and that the board erred in considering them without first informing H W of the deficiencies. As we found in CECOS Internatl.,
the application process should not be utilized as a method for denying a permit, and an applicant should not have to guess what information is being required of it. See CECOS Internatl., at 57-58. In this respect, it is the board's function to ensure, rather than frustrate, compliance with the statutory requirement that an applicant submit a "completed application." See id. at 58. In the present case, H's W's applications were denied based upon the application process and not based upon the merits. R.C. 3714.06 provides that the board can deny a CDD license only if it finds that the proposed facility does not comply with the applicable rules and standards. Here, the board did not deny the licenses based upon anything related to the proposed facility or applicable rules and standards; rather, it denied the applications because they did not fully address all of the regulatorily enumerated components necessary of CDD applications. Under such circumstances, the board was required to notify H W of the nature of the deficiencies before it could address the merits of the application. Therefore, we find ERAC properly found the applications were incomplete, and the board's first and second assignments of error are overruled.
 {¶ 22} Accordingly, the board's two assignments of error are overruled, and the orders of the Environmental Review Appeals Commission are affirmed.
Orders affirmed.
Klatt and Sadler, JJ., concur.