**DAYTON POWER AND LIGHT COMPANY, Appellant,**

**v.**

**SCHREGARDUS, Dir., Appellee.**

[Cite as *Dayton Power & Light Co. v. Schregardus* (1997), 123 Ohio App.3d 476.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APH02–293.

Decided Sept. 25, 1997.

*Athan A. Vinolus* and *Kirk N. Guy*, for appellant.

*Betty D. Montgomery*, Attorney General, *J. Gregory Smith* and *Robert E. Ashton*, Assistant Attorneys General, for appellee.

JOHN C. YOUNG, Judge.

This matter is before this court upon the appeal of the Dayton Power and Light Company, appellant, from the January 30, 1997, ruling of the Ohio Environmental Review Appeals Commission ("ERAC"), which granted appellee's motion to dismiss. The history of this case is as follows: On July 12, 1996, property owned in part by the appellant was placed onto the Ohio EPA's Master Sites List ("MSL"). The MSL is published annually and identifies property that the Ohio Environmental Protection Agency ("Ohio EPA") has determined to be contaminated or that is suspected to be contaminated. Appellant's property was added to the MSL apparently without any prior opportunity for comment and without any prior notice. On July 12, 1996, appellant was notified that its property had been listed on the MSL because of levels of volatile organic compounds ("VOCs") which were detected in a well located on the property. On August 9, 1996, appellant filed an appeal with the ERAC, challenging the lawfulness and reasonableness of the placement of appellant's property on the MSL. Thereafter, appellee moved to dismiss appellant's appeal, claiming that placing the property on the MSL was not a final appealable action subject to ERAC's jurisdiction. The ERAC granted appellee's motion to dismiss and issued findings of fact and conclusions of law and a final order on January 30, 1997. Appellant appealed to this court and sets forth the following assignment of error:

"The Ohio Environmental Review Appeals Commission ('ERAC') erred in holding that the Ohio Environmental Protection Agency's ('Ohio EPA') placing or identification of private property on Ohio EPA's published and distributed contaminated properties list did not constitute a final appealable action subject to ERAC's jurisdiction."

Appellant also sets forth the following issues for review:

"1. Whether the Ohio EPA's action of placing a property on Ohio EPA's MSL constitutes a final action appealable to the ERAC.

"2. Whether the ERAC's factual findings in its Order are supported by reliable, probative and substantial evidence when there were no evidence, testimony or affidavits presented to the ERAC and no hearing was conducted.

"3. Whether Ohio EPA's action placing DP & L's property on the MSL adversely affected a substantive property right of DP & L without due process of law."

In its sole assignment of error, appellant argues that the ERAC erred in dismissing appellant's appeal to the ERAC for lack of jurisdiction. Pursuant to R.C. 3745.04, actions or acts of the director of Ohio EPA may be appealed to the ERAC. R.C. 3745.04 defines "action" and "act" as follows:

"As used in this section, 'action' or 'act' includes the adoption, modification, or repeal of a rule or standard, the issuance, modification, or revocation of any lawful order other than an emergency order, and the issuance, denial, modification, or revocation of a license, permit, lease, variance, or certificate, or the approval or disapproval of plans and specifications pursuant to law or rules adopted thereunder."

It is well established that the ERAC has jurisdiction over acts of the director beyond those enumerated in the statute. As noted by this court in *Youngstown Sheet & Tube Co. v. Maynard* (1984), 22 Ohio App.3d 3, 6, 22 OBR 37, 40, 488 N.E.2d 220, 223:

"The General Assembly, however, in drafting R.C. 3745.04 chose to illustrate rather than define an appealable action, thereby vesting the board with jurisdiction over acts of the director beyond the adoption, modification or appeal of a rule."

Moreover, it has also been held that statutory appeal procedures are remedial in nature and therefore must be liberally construed in favor of permitting appeals to the ERAC. *Northeast Ohio Regional Sewer Dist. v. Tyler* (1986), 34 Ohio App.3d 129, 133, 517 N.E.2d 972, 976–977; *Jackson Cty. Environmental Commt. v. Shank* (1990), 67 Ohio App.3d 635, 639, 588 N.E.2d 153, 156.

Furthermore, the ERAC has recognized that an action of the Ohio EPA may occur even when the action has been taken or triggered by an employee of the Ohio EPA rather than the director. *Aristech Chem. Corp. v. Shank* (July 25, 1989), EBR No. 441977. In that case, the EBR[1] further noted that the question

---

1. The Environmental Board of Review ("EBR") was the predecessor to what is now known as the ERAC.

whether a particular event or a particular document constitutes an action of the agency is a question of fact that must be determined by the board based upon the surrounding circumstances.

The following standard has been applied in determining whether a document, such as the July 12 letter in the instant action, constitutes an action in those instances that are not specifically identified as actions in R.C. 3745.04:

"In determining whether or not the event or document in question is an appealable action, one of the issues the Board must determine is whether or not the event or document in question determines or adjudicates with finality any legal rights and privileges of the appealing party or parties." *Inorganic Recyling of Ohio, Inc. v. Shank* (Nov. 30, 1989), EBR No. 252011.

Appellee argues that the MSL is merely a working list and that it does not determine or adjudicate with finality any legal rights and privileges of appellant. Thus, appellee argues that there is no action in this matter to be appealed to the ERAC and that the ERAC properly dismissed appellant's appeal for lack of jurisdiction. We disagree.

A review of the record in this matter demonstrates that according to Ohio EPA's July 12, 1996 letter, the level of VOCs in well number two was the sole basis for the Ohio EPA's determination that this site should be placed on the MSL. No evidence has been presented to this court to demonstrate what level of VOCs is necessary to determine that a well is contaminated or suspected of being contaminated. Appellant's brief describes the various levels of VOCs in the various wells located on this site. Arguably, appellant should be given the opportunity to contest Ohio EPA's finding that the levels of VOCs in well number two are high enough to constitute contamination. As noted earlier, appellant was given no notice and was given no opportunity to challenge the Ohio EPA's findings pertaining to the level of VOCs in this well.

Moreover, as noted by appellant, and as acknowledged by the wording of the MSL document itself:

"The MSL Report is published annually to provide interested persons with a quick reference to property known or suspected to be contaminated from the management of hazardous waste in Ohio. The 1996 MSL Annual Report is of interest to public officials, local health departments, commercial developers, insurance companies, banks, and attorneys that are seeking to make informed decisions about land value, acquisition, development, or any other purpose."

It is undisputed that government officials and businesses rely on the listings in the MSL when evaluating property. The parties dispute whether inclusion of this site on the MSL materially and adversely affects appellant. However, as noted by appellant, the very purpose of conducting a hearing before the ERAC

would be to provide appellant with the opportunity to demonstrate that the mere inclusion of the site on the MSL materially and adversely affects the value of the property. A hearing would permit the ERAC to determine whether the July 12 letter constituted an action based upon the surrounding events and circumstances.

In addition, appellant argues that Ohio EPA does not have specific statutory authority to create the MSL or to place this site upon the MSL. Moreover, Ohio EPA has apparently failed to promulgate any regulations creating the MSL or creating authority to place sites on the MSL. Should appellant wish to challenge Ohio EPA's creation of MSL, it appears that the appropriate body to consider this issue would be the ERAC.

This court is further troubled by the fact that Ohio EPA placed this property on the MSL without any prior notice, or opportunity for comment. Arguably, the Ohio EPA can make a mistake, and its action of placing this site on the MSL should at least be subject to a hearing. Finally, the parties have failed to provide this court with any information as to the mechanism, if any, whereby a property owner may have a site removed from the MSL, should it be determined that there was no contamination at that site. Clearly, property owners should have the ability to have sites removed from the MSL.

Rather, appellee *concedes* that the MSL carries with it "neither a rule-created standard for listing nor rule-created right of removal." Thus, appellee concedes that there exist no rule-created standards to determine whether a site should be listed and/or removed from the MSL. Given that there is no apparent mechanism or procedure for removal from the MSL, this court finds that the ERAC must review these MSL determinations because it is apparent that a property owner has no other recourse but to appeal to the ERAC.

Furthermore, this court finds that the lack of such a mechanism has the effect of making placement on the MSL more permanent. Although it is not controlling, we find the following language of *States Land Improvement Corp. v. Environmental Protection Agency* (1992), 231 Ill.App.3d 842, 173 Ill.Dec. 285, 596 N.E.2d 1164 persuasive:

"As the IEPA points out, any damage to States Land, if the listing is wrong, is indirect, as States Land is neither required to take any action in regard to the site nor prohibited from making any use of the site because of its listing on the SRAPL. * * * However, placement of a site on the SRAPL is a legal determination of its status. While section 860.300 of IEPA's rules directs the agency to remove a site from the SRAPL when substantial threat of release of hazardous substance from that site no longer exists, we are unaware of any regulation which gives a site owner a procedure whereby it can prove the site is no longer such a threat. *Thus, the action of placing a site on the SRAPL has*

*strong elements of permanence and finality from which judicial review must be granted.*" (Emphasis added.) *Id.* at 847–848, 173 Ill.Dec. at 288, 596 N.E.2d at 1167.

For all of the above reasons, we find that the ERAC erred in dismissing appellant's appeal for lack of jurisdiction. Accordingly, we sustain appellant's sole assignment of error and reverse and remand this matter so that the ERAC may provide appellant with an evidentiary hearing to present its claim that the decision of Ohio EPA to put appellant's property on the MSL affected a substantial legal right with finality and/or that Ohio EPA exceeded its authority by promulgating the MSL. This matter is reversed, and the cause is remanded to the ERAC for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BOWMAN and CLOSE, JJ., concur.