OPINON
{¶ 1} Appellant, US Technology Corporation ("UST"), appeals from a judgment of the Environmental Review Appeals Commission ("ERAC") dismissing appellant's appeal from the September 11, 2006 letter that a district representative of the Division of Hazardous Waste Management, Ohio Environmental Protection Agency ("OEPA") mailed to appellant. Appellant assigns a single error: *Page 2 
 The September 11, 2006 correspondence from the Ohio EPA to US Technology Corporation concluding that Ohio law was violated was a final action appealable to the Environmental Review Appeals Commission ("ERAC") pursuant to ORC 3745.04.
Because the September 11, 2006 correspondence is not an action appealable to ERAC, we affirm.
 {¶ 2} On September 11, 2006, Melody Stewart, a district representative from OEPA's Division of Hazardous Waste Management sent a certified mail letter to UST's attorney. The letter responded to information UST provided to OEPA in an August 10, 2006 meeting convened to discuss OEPA's July 10, 2006 letter addressing UST's disposal of hazardous waste. In the September 11 letter, Stewart advised of her visits to various construction sites and her conclusion that "all of the information received during the site visits was accurate and that block was used in a manner constituting disposal as previously discussed in the July 10, 2006 letter[.] * * * Ohio EPA will continue to monitor US Technology for compliance with all of Ohio's hazardous waste laws and regulations as found under the Ohio Revised Code (ORC) and the Ohio Administrative Code (OAC)."
 {¶ 3} On October 6, 2006, UST filed an appeal to ERAC. In it, appellant contended the OEPA, Division of Hazardous Waste Management, wrongfully determined UST violated R.C. 3734.02(E) and (F) and wrongfully imposed on UST additional responsibilities and obligations that caused UST great hardship. Appellee filed a motion to dismiss the appeal, claiming ERAC lacked jurisdiction over the subject matter of the appeal because the September 11, 2006 letter from OEPA is not a final appealable action of the director. *Page 3 
 {¶ 4} After allowing appellant's response, and relying on a body of decisions it issued, ERAC determined the letter (1) "evinces details of an interactive process engaged in by the parties to resolve an ongoing matter," and (2) "is clearly not independently enforceable on its face." (ERAC Order, 6.) As a result, ERAC concluded that Stewart's letter did not adjudicate "with finality any legal right or privilege held by UST." Id. Persuaded the letter did not constitute a final act or action of the director that was appealable to ERAC, ERAC granted the director's motion to dismiss. Appellant appeals, contending the letter is a final action subject to review before ERAC.
 {¶ 5} Pursuant to R.C. 3745.04, "[a]ny person who was a party to a proceeding before the director may participate in an appeal to the environmental review appeals commission for an order vacating or modifying the action of the director * * *." Ohio R.C. 3745.04 further defines "action" to include (1) "adoption, modification, or repeal of a rule or standard," (2) "the issuance, modification or revocation of any lawful order other than an emergency order," (3) "the issuance, denial, modification or revocation of a license, permit, lease, variance, or certificate," or (4) "the approval or disapproval of plans and specifications pursuant to law or rules adopted thereunder." In drafting R.C. 3745.04, the General Assembly chose to illustrate rather than define an appealable action and thus gave ERAC jurisdiction over acts beyond those delineated in the statute. Dayton Power Light Co. v.Schregardus (1997), 123 Ohio App.3d 476, quoting Youngstown Sheet TubeCo. v. Maynard (1984), 22 Ohio App.3d 6.
 {¶ 6} "ERAC has recognized that an action of the Ohio EPA may occur even when the action has been taken or triggered by an employee of the Ohio EPA rather than *Page 4 
the director." Dayton Power, supra, at 478, citing Aristech Chem. Corp.v. Shank (July 25, 1989), EBR No. 441977. In Aristech, the EBR, now known as ERAC, "further noted that the question whether a particular event or a particular document constitutes an action of the agency is a question of fact that must be determined by the board based upon the surrounding circumstances," including the substance and form of the letter. Id. at 478-479. Quoting from Inorganic Recycling of Ohio, Inc.v. Shank (Nov. 30, 1989), EBR No. 252011, Dayton Power noted that "[i]n determining whether or not the event or document in question is an appealable action, one of the issues the Board must determine is whether or not the event or document in question determines or adjudicates with finality any legal rights and privileges of the appealing party or parties." Dayton Power, at 479.
 {¶ 7} Initially, several factors are pertinent in addressing the form of the September 11 letter. As ERAC noted, (1) the OEPA director did not sign the letter, (2) the letter does identify itself as a final action, (3) the letter does not notify UST of its appeal rights, and (4) the letter does not suggest it was entered into the director's journal as a final action. We thus agree with ERAC that the letter, in form, is not a final action. UST rightly notes, however, that the letter nonetheless may constitute final action if in substance it finally adjudicates UST's legal rights.
 {¶ 8} In content, the September 11 letter initially references an August 10, 2006 meeting between Ohio EPA and UST "to discuss Ohio EPA's July 10, 2006 letter." At that meeting, UST "provided information to Ohio EPA to address the findings discussed in Ohio EPA's July 10, 2006 letter." (September 11 letter, 1.) Having completed her review *Page 5 
of the information UST provided, Stewart responded with her September 11 letter "in the same format as your August 10, 2006 letter." Id.
 {¶ 9} According to the September 11 letter, "Ohio EPA conducted the construction site visits to verify compliance" with Ohio's regulations and laws regarding hazardous waste. Id. As the letter explained, "Ohio EPA used the monthly reports that US Technology was required to submit per the Director's Final Findings Orders dated June 17, 2004 to determine which sites to visit." Id. From the monthly reports, the Ohio EPA was able to determine the customer name, address, the number of blocks sold and the type of block, either above or below grade. Because the monthly reports were clear about what type of block was used at each construction site, the Ohio EPA visited the sites to confirm the information with the site representative. Based on the site visits, Ohio EPA concluded "that above-grade only block was used below-grade and was used in a manner constituting disposal as originally stated in the July 10, 2006 letter." (September 11 letter, 3.) The letter then sets forth four proposals regarding packing labels, direct sales to customers, distributor training, and product literature that UST was to adopt to rectify the situation.
 {¶ 10} The letter concludes by stating "Ohio EPA believes that all of the information received during the site visits was accurate and that block was used in a manner constituting disposal as previously discussed in the July 10, 2006 letter. Ohio Revised Code 3734.02(E) and (F), Prohibitions will not be withdrawn as requested in your August 10, 2006 letter." (September 11 letter, 4.) In what appears to be a reference to the four proposals, the letter advises that the "violation was abated" in Ohio EPA's earlier *Page 6 
correspondence that "outlined a proposal which UST should have already implemented." (September 11 letter, 4-5.) The letter further advises that "Ohio EPA will continue to monitor US Technology for compliance with all of Ohio's hazardous waste laws and regulations as found under the Ohio Revised Code (ORC) and the Ohio Administrative Code (OAC)." (September 11 letter, 5.)The last sentence states that "[i]f you should have any questions with this letter, please feel free to contact me," specifying the number where Stewart could be reached. Id.
 {¶ 11} A number of factors persuade us the September 11 letter is not a final action. Initially, the letter references an August 10 meeting that not only provided UST and OEPA the opportunity to discuss Ohio EPA's July 10, 2006 letter and the findings contained in it, but also afforded UST the occasion to provide information to Ohio EPA to address the issues raised in the July 10 letter. Following the August 10, 2006 meeting, Stewart conducted on-site visits to verify the information provided and to determine compliance with Ohio's applicable environmental laws, advising of her observations in the September 11 letter. The letter thus was the latest in a series of meetings and letters addressing issues between UST and OEPA.
 {¶ 12} Based on the visits, Stewart advised that the July 10, 2006 letter accurately concluded UST was using above-grade only block below-grade and in a manner constituting disposal of hazardous waste. In effect, if not directly, Stewart advised that UST was violating Ohio hazardous waste disposal laws, and she followed with four proposals set forth in earlier OEPA correspondence. As a result, the four proposals were nothing new to UST, but a reiteration, following on-site visits, of steps already submitted *Page 7 
for UST to undertake in order to correct the deficiencies Stewart noted. Indeed, whether it is the July 10, 2006 letter of OEPA or some other pre-September 11 letter, it "outlined a proposal which US Technology should have already implemented." (Emphasis added.) Id.
 {¶ 13} In the final analysis, the September 11, 2006 letter confirms (1) OEPA's conclusion that the information conveyed in its July 11, 2006 letter was accurate and (2) the proposed steps that OEPA hoped UST implemented. To further support the conclusion that the letter is not meant to finally adjudicate rights, it concludes by advising that OEPA will continue to monitor UST's compliance with Ohio's applicable environmental laws.
 {¶ 14} UST nonetheless contends the letter should be deemed final because OEPA advised UST's clients of UST's violations, causing UST to be "taken out of specifications on particular jobs for its products," to lose "income as a result of said Ohio Environmental Protection Agency's * * * advice" and "to change its marketing, labeling, training" of its product to satisfy OEPA. (Memorandum in Opposition to Appellee's Motion to Dismiss, 1.) While nothing in the record supports the contention set forth in UST's memorandum, we note OEPA's September 11 letter specifies that UST filed monthly reports providing customer names and addresses, as well as the number and type of block sold through UST's customers. According to the September 11 letter, the filings were submitted pursuant to the director's final findings and orders of June 17, 2004. UST cannot be surprised that OEPA is aware of UST's customers or that, in oversight of a previous order, OEPA would visit the site of some of UST's customers. *Page 8 
 {¶ 15} UST nonetheless contends OEPA's actions here replicate the same actions that caused a remand to the board for a hearing in DaytonPower. In that case, however, the information about Dayton Power was published in an MSL report, a report designed "to provide interested persons with a quick reference to property known or suspected to be contaminated from the management of hazardous waste in Ohio." Id. at 479. In Dayton Power, no one disputed "that government officials and businesses rely on the listings in the MSL when evaluating property." Id. Nothing of such finality occurred here. Rather than publish its conclusions in a widely disseminated annual report, OEPA visited the necessary sites to verify the information UST provided and discussed the matter with various personnel at the site.
 {¶ 16} In the final analysis, OEPA's function as a regulatory agency requires it to advise a company if OEPA believes the company is violating Ohio's environmental laws. To do otherwise would abdicate OEPA's responsibilities under those laws. By notifying a company of OEPA's observations and discussing the issues, OEPA maintains informal discourse with the company in an effort to determine whether agreement can be reached about potential violations and the remedies to rectify them. If the company disagrees with OEPA's recommendations, it need not abide by them, but in all likelihood it can expect a statement of violations. The interim step, however, of advising and investigating does not rise to the level of a final action. Because ERAC properly concluded that the September 11, 2006 letter "evinces details of an interactive process engaged in by the parties to resolve an ongoing matter," the letter is not a final action under R.C. 3745.04. *Page 9 
 {¶ 17} Accordingly, we overrule appellant's single assignment of error and affirm the judgment of ERAC dismissing appellant's appeal.
Judgment affirmed.
SADLER, P.J., and T. BRYANT, J., concur.
T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1