TRANS RAIL AMERICA, INC., APPELLEE, *v.* ENYEART, APPELLANT.

[Cite as *Trans Rail Am., Inc. v. Enyeart,* **123 Ohio St.3d 1, 2009-Ohio-3624.**]

*Administrative procedure — Environmental Review Appeals Commission — Application for license for facility for disposal of construction and demolition debris — Appealability of determination that application is incomplete — R.C. 3745.04 — Requirement of finality.*

(No. 2008-0359 — Submitted January 14, 2009 — Decided July 30, 2009.)

APPEAL from the Court of Appeals for Franklin County,

Nos. 07AP-273 and 07AP-284, 2007-Ohio-7144.

_____

**CUPP, J.**

**{¶ 1}** The issue in this case is whether the Environmental Review Appeals Commission ("ERAC") has jurisdiction to hear an appeal from a decision of a local board of health that a license application for a facility for the disposal of construction and demolition debris is incomplete. We conclude that ERAC has jurisdiction to entertain such an appeal if the letter is a final decision that substantially affects the applicant's property or other legal rights.

**I**

**{¶ 2}** In May 2004, appellee, Trans Rail America, Inc. ("Trans Rail"), applied to the Trumbull County Health Department for a license to establish a facility for disposal of construction and demolition debris ("C&DD").[1] In July 2004, Dr. James Enyeart, Trumbull County health commissioner, advised Trans

_____

1. The Trumbull County Health Department is an approved health district within the meaning of Ohio Adm.Code 3745-37-08 and former R.C. 3714.06(A), which means that the district had the authority to issue licenses for C&DD facilities. In an area without a health district on an approved list, the director of environmental protection may issue such licenses. R.C. 3714.051(A)(2); former R.C. 3714.06(A), 1990 Am. Sub.H.B. No. 366, 143 Ohio Laws, Part III, 4670.

Rail by letter that he could not consider the application because it was incomplete, and he informed Trans Rail of the incomplete aspects of its application. On July 29, 2004, representatives of Trans Rail (CT Consultants, an engineering firm) met with Enyeart to discuss the application. A year and a half later, on December 16, 2005, Enyeart received from CT Consultants Trans Rail's written response to Enyeart's letter, including additional information to support the license application.

{¶ 3} Enyeart again determined that the application was incomplete and so notified Trans Rail in a letter dated February 15, 2006. Attached to the letter was a detailed report outlining additional information that Enyeart (through the health department's consulting firm, Bennett and Williams Environmental Consultants, Inc.) had determined was necessary for the application to be considered on the merits. Most of the information requested related to the previously identified areas in which Enyeart had found the application incomplete in July 2004, although some of the items identified as incomplete were explained in further detail. CT Consultants and HzW Environmental Consultants responded on behalf of Trans Rail in letters dated March 30, 2006. Those letters included some additional or corrected information in support of the C&DD license application and, in some cases, an explanation of where the requested information could be found in the original application. Some responses indicated that Trans Rail did not believe that the information was required, at least not at the initial licensure stage. (Neither of those letters indicated specifically that Trans Rail had no further information to provide other than what was in the March 30 letters.) In the March 30 letter of CT Consultants, Trans Rail urged Enyeart to reconsider his decision that the application was incomplete. Despite the information Trans Rail submitted on March 30, Enyeart in a letter dated May 31, 2006, again determined that Trans Rail's application was incomplete and outlined the additional information still needed to complete the application. The May 31 letter did not

raise new areas of information that the director requested, but instead related to areas identified in the February 2006 letter and report from Enyeart. Many of the comments in Enyeart's consultant's May 30, 2006 letter to him indicated that Trans Rail's responses to date had not answered the questions Enyeart and his consultant had asked. In other areas, the letter indicated that Enyeart's earlier comments had been addressed. The letter from Enyeart's consultant ended with a recommendation that "the Health District offer to meet with the Applicant to discuss the new comments, if appropriate."

{¶ 4} On June 30, 2006, Trans Rail filed an appeal to ERAC of Enyeart's May 31, 2006 letter. Trans Rail sought an order from ERAC determining that Trans Rail's license application was complete within the meaning of Ohio Adm.Code 3745-37-02 and ordering the department "to process Trans Rail's C&DD License Application."

{¶ 5} Enyeart moved to dismiss Trans Rail's appeal, asserting that ERAC lacked jurisdiction because the May 31, 2006 letter was not a final act or action of the department appealable under R.C. 3745.04. ERAC dismissed the appeal. ERAC determined that the letter was not a final, appealable action but an intermediate step in the continuing application process.

{¶ 6} Trans Rail appealed to the Tenth District Court of Appeals. The court reversed ERAC's order, reasoning that ERAC has appellate jurisdiction under R.C. 3745.04(B) "to consider whether the application is complete and, if it is," to order the department to either issue or deny Trans Rail a license. *Trans Rail Am., Inc. v. Enyeart*, 10th Dist. No. 07AP-273 and 07AP-284, 2007-Ohio-7144, ¶ 10. The appellate court held that it was not necessary to consider whether Enyeart's May 31, 2006 letter constituted a final "action" of the board of health, because ERAC's authority under R.C. 3745.04(B) to order the performance of an "act" was separate from, and did not depend on, ERAC's authority under that statute to "vacat[e] or modify[]" the action of the director or a local board of

health." Id., ¶ 11. The dissenting judge on the court of appeals would have held that ERAC's statutory authority to order the performance of an "act" was limited to ordering relief in furtherance of its determination of an appeal from a final action of a director or a board of health. Id. at ¶ 21, 30, and 32 (French, J., dissenting).

{¶ 7} Enyeart sought discretionary review in this court, asserting that R.C. 3745.04(B) authorizes ERAC to review only final actions of the director or a board of health and that letters requesting additional information from license applicants are not final actions and therefore not appealable to ERAC. We accepted the appeal. 118 Ohio St.3d 1432, 2008-Ohio-2595, 887 N.E.2d 1202.

**II**

{¶ 8} The answer to the question presented for our review depends upon the proper construction of R.C. 3745.04, which authorizes appeals of certain orders to ERAC. That statute provides:

{¶ 9} "(A) * * *

{¶ 10} "As used in this section, *action or act includes* the adoption, modification, or repeal of a rule or standard, the issuance, modification, or revocation of any lawful order other than an emergency order, and the issuance, denial, modification, or revocation of a license, permit, lease, variance, or certificate, or the approval or disapproval of plans and specifications pursuant to law or rules adopted thereunder.

{¶ 11} "(B) Any person who was a party to a proceeding before the director of environmental protection may participate in an appeal to the environmental review appeals commission *for an order vacating or modifying the action of the director or a local board of health, or ordering the director or board of health to perform an act.* The environmental review appeals commission has exclusive original jurisdiction over any matter that may, under this section, be brought before it. * * *

4

{¶ 12} "* * *

{¶ 13} "(D) An appeal shall be in writing and shall set forth the *action* complained of and the grounds upon which the appeal is based.

{¶ 14} "The appeal shall be filed with the commission *within thirty days after notice of the action*. * * *

{¶ 15} "* * *

{¶ 16} "Within seven days after receipt of the notice of an appeal filed under division (B) of this section, the director or local board of health, as applicable, shall prepare and certify to the commission a record of the proceedings out of which the appeal arises, including all documents and correspondence, and a transcript of all testimony.

{¶ 17} "* * *

{¶ 18} "The filing of an appeal does not automatically suspend or stay execution of *the action appealed from*. Upon application by the appellant, the commission may suspend or stay the execution pending immediate determination of the appeal * * *." (Emphasis added.)

*A*

{¶ 19} The court of appeals determined that the phrase "or ordering the director or board of health to perform an act" in R.C. 3745.04(B) sets forth a separate basis for ERAC's appellate jurisdiction in addition to review of final actions of the board. 2007-Ohio-7144, ¶ 11. The appellate court held that "the statute invests the ERAC with jurisdiction over two types of appeals: (1) an appeal from an 'action' that the ERAC may vacate or modify, and (2) an appeal requesting that the ERAC order the performance of an 'act.' " Id., ¶ 9. The court concluded that because R.C. 3745.04(A) defines "action" and "act" to include "the issuance, denial, modification, or revocation of a license," R.C. 3745.04(B) authorizes ERAC to order the department to perform the act of issuing or denying

the license Trans Rail requested if ERAC first determines that Trans Rail's license application is complete. Id. at ¶ 9, 10.

1

{¶ 20} We are not persuaded that R.C. 3745.04 can be read as providing an independent basis for ERAC to exercise appellate jurisdiction over a nonfinal decision of a board of health or the director. R.C. 3745.04(B) provides for appeals to ERAC "for an order vacating or modifying the action of the director or a local board of health, or ordering the director or board of health to perform an act." R.C. 3745.04(A) defines both "action" and "act" to include "the issuance, modification, or revocation of any lawful order other than an emergency order, and the issuance, denial, modification, or revocation of a license, permit, lease, variance, or certificate," among other matters.

{¶ 21} R.C. 3745.04(D) contemplates that a definite and identifiable action will give rise to an appeal to ERAC. R.C. 3745.04(D) requires appeals to ERAC to "set forth the *action* complained of." (Emphasis added.) Appeals to ERAC must be filed within 30 days "after notice of the *action*." (Emphasis added.) R.C. 3745.04(D). Compilation of the "record of the proceedings out of which the appeal arises," including a "transcript of all testimony," under R.C. 3745.04(D), also presupposes an appeal from a decision that is in some sense final. The availability of a stay of "the action appealed from," in R.C. 3745.04(D), also assumes that the action is not an intermediary step in an ongoing, yet-to-be-concluded process.

{¶ 22} The statutory scheme gives the director (or, in this case, the local board of health) the role of initial review and determination of license applications. R.C. 3714.051(A)(2); former R.C. 3714.06(A), 1990 Am.Sub.H.B. No. 366, 143 Ohio Laws, Part III, 4670. R.C. 3714.053 now requires public hearings. The general statutory scheme provides for hearings to be conducted either before the director or local board or before ERAC on appeal, with regard to

6

decisions granting, denying, or revoking licenses. R.C. 3745.07 (the director of environmental protection may issue a proposed order to grant or deny a license, and if the director denies or issues a license not preceded by a proposed order, a person who is adversely affected may appeal to ERAC); R.C. 3745.05 (if no adjudication hearing was conducted, ERAC shall conduct a hearing de novo on appeal).

{¶ 23} Allowing appeals of nonfinal licensing decisions could undermine the statutory framework. If actions or acts need not be final to be appealed, then successive appeals of interim decisions of the reviewing body would be possible. If ERAC were to be inundated with appeals of nonfinal decisions, the flood could delay the time for decision on appeals and thus slow the license-review process as a whole.

{¶ 24} Determining which nonfinal decisions would trigger appeal rights would be less than clear, making it difficult for a would-be appellant even to determine when the 30-day appeal time in R.C. 3745.04(D) begins to run. Additionally, as discussed below, appellate court and ERAC decisions concerning appellate jurisdiction under R.C. 3745.04(B) have required some indicia of finality of a decision to be appealable, even if the decision is not designated as final.

{¶ 25} We agree with the dissenting judge below that the better reading of ERAC's authority under R.C. 3745.04(B) to "order[] the director or the board of health to perform an act" permits ERAC, upon review of a final action, to direct the licensing entity to grant the approval that the licensing entity failed or refused to grant. 2007-Ohio-7144, ¶ 17 (French, J., dissenting). In that instance, ERAC would not be ordering a modification of the action, or merely vacating the decision below, but would be ordering the board of health or director to take the action that it believes should have been taken but was not. The fact that R.C. 3745.04(A) defines "act" and "action" interchangeably supports this view. R.C.

3745.04(A) lists examples of decisions that constitute either "acts" or "actions." For example, a decision to issue or deny a license may be an "action" or "act" under R.C. 3745.04(A). Under R.C. 3745.04(B), an action such as a denial of a license may be appealed to ERAC, and ERAC has authority under the statute not only to vacate that order but also to order the director or a board of health to perform the act of issuing the license.

{¶ 26} We hold that ERAC's statutory authority to order the performance of an act is ancillary to ERAC's appellate jurisdiction to review final actions of a local board of health or the director of environmental protection. ERAC may order the board or director to perform an act in accordance with ERAC's decision on appeal of an action, rather than simply vacating or modifying the action. This reading of R.C. 3745.04 comports with ERAC's expertise and authority to review decisions granting or denying licenses consistent with environmental-law requirements.

2

{¶ 27} Having decided that ERAC's authority under R.C. 3745.04(B) to "order[ ] the director or board of health to perform an act" does not provide an independent basis for ERAC to entertain appellate jurisdiction over nonfinal decisions of a local board of health, we next consider whether a board's determination that a C&DD license application is incomplete is an immediately appealable action under R.C. 3745.04(A) and (B).

{¶ 28} R.C. 3745.04(A) defines both "action" and "act" to include "the issuance, denial, modification, or revocation of a license," but the question here is whether a license applicant may appeal a determination that the license application is incomplete. The determination that a license application is incomplete is not listed as an "action" or "act" under R.C. 3745.04(A). However, R.C. 3745.04(A)'s definition of "action" or "act," which may be appealed to ERAC, is not limited to the decisions listed in that statute. The statute says that

8

"action" or "act" *includes* certain things, thus showing the General Assembly's intent to illustrate the types of actions that may be appealable, rather than to set out an exhaustive list. *Youngstown Sheet & Tube Co. v. Maynard* (1984), 22 Ohio App.3d 3, 6, 22 OBR 37, 488 N.E.2d 220 (holding that the predecessor to ERAC had appellate jurisdiction to consider whether it was reasonable and lawful for the director of environmental protection to adopt standards for the disposal and storage of hazardous waste without adopting a rule allowing interested parties a right to petition the director for changes in the state hazardous-waste program).

{¶ 29} When an action is not listed in R.C. 3745.04(A), ERAC has considered whether the form of the document shows that it is a final action. ERAC has determined, for example, that documents that designate the decision as a final action or advise the recipient of the right to appeal or that have been entered on the director's journal are indicative of final "actions." See, e.g., *Trans Rail Am., Inc. v. Enyeart*, 2007-Ohio-7144, ¶ 33 (French, J., dissenting); *Lake v. Jones* (Nov. 20, 2003), ERAC Nos. 255300 and 255601, 2003 WL 23358112. The May 31, 2006 letter from Enyeart to Trans Rail does not contain these indicia of a final action.

{¶ 30} The court of appeals and ERAC also review the substance of the challenged decision to ascertain whether it finally determines some matter that affects the appellant's substantial rights, privileges, or property. In *Dayton Power & Light Co. v. Schregardus* (10th Dist.1997), 123 Ohio App.3d 476, 704 N.E.2d 589, for example, the court reversed ERAC's dismissal of an appeal from the director's decision to place a property on a master site list of contaminated properties. Government officials and other businesses reviewed that list when evaluating property. Because appellant had no opportunity either to contest the inclusion of its property on the list before the list was made public or to have appellant's property removed from the list, the court remanded the case to ERAC to hear the owner's claim that inclusion of the property on the master site list

"affected a substantial legal right with finality and/or that Ohio EPA exceeded its authority by promulgating" the list. Id. at 481. ERAC's jurisdiction to hear the appeal was not defeated by the fact that the action complained of was not listed in R.C. 3745.04(A).

{¶ 31} The key issue in determining whether a particular decision not listed in R.C. 3745.04(A) is an action or act that may be appealed under R.C. 3745.04(B) is whether it is in some sense a final decision that substantially affects the appellant's property or other legal rights, even if it is not designated as final. *Dayton Power & Light. Cain Park Apts. v. Nied* (1981), 10th Dist. Nos. 80AP-817, 80AP-852, 80AP-867, 80AP-868, and 80AP-869, 1981 WL 3294, relied upon by Trans Rail, confirms this approach. In *Cain Park Apts.*, appellants, owners of apartment buildings, applied to Ohio EPA to register their incinerators to dispose of residential waste. The appellants received letters from EPA advising them that the information they submitted about the nature and quantity of the emissions from their incinerators was deficient and that if appellants failed to provide the requested information within two weeks, their registration applications would be returned. Then-applicable regulations provided that EPA could treat a defective application as if it had not been filed at all. Ohio Adm.Code 3745-35-02(B)(9), 1979-1980 Ohio Monthly Record 4270. Appellants appealed these letters to ERAC's predecessor, the Environmental Board of Review ("EBR"), which held that it had no jurisdiction over the appeals.

{¶ 32} Upon review, the court of appeals in *Cain Park Apts.* held that the return of appellants' registration application as defective was an appealable action because it was tantamount to a denial of the application. The fact that EPA could return an application without further hearing or compliance with the procedures for denial of an application made the challenged decision the legal equivalent of a denial, i.e., a final decision with regard to the application submitted.

**{¶ 33}** In this case, the applicable rule states, "An incomplete application [for a C&DD facility] shall not be considered." Ohio Adm.Code 3745-37-02(A)(2). The rule further requires that the applicant must be notified of the nature of the deficiency within 60 days of the application. Id. Ohio Adm.Code 3745-37-02(A)(3) also provides that if the licensing authority determines that information in addition to that required by Ohio Adm.Code 3745-37-02 is necessary to determine whether the application satisfies the license requirements, the applicant must supply that information as a precondition to further consideration of the license application. The rules thus contemplate additional proceedings after an initial determination that a C&DD application is incomplete, including notification of the precise nature of the deficiencies and specification of any further information required to consider the application. These rules suggest that in the usual case, a decision that an application is incomplete, accompanied by a specification of the precise nature of the deficiencies and a reasonable request for additional information, will not be a final act or action of the licensing agency.

**{¶ 34}** However, as ERAC explained in this case, the requirement of a final decision does not mean that the licensing entity (a board of health or the director of environmental protection) can evade appellate review under R.C. 3745.04(B) simply by deeming a license application incomplete and repeatedly and unreasonably requesting additional information before the licensing entity will consider the application on its merits. Application requirements in statutes and administrative rules, as reasonably amplified by the licensing agency, will be instructive regarding whether an application for a license is complete. See, e.g., *CECOS Internatl., Inc., v. Shank* (1991), 74 Ohio App.3d 43, 55, 598 N.E.2d 40. Even if a decision is not designated a final action, it may be a reviewable final

action if it in effect determines any legal right or privilege of the appellant. *Dayton Power & Light*; *Cain Park Apts.*[2]

*B*

{¶ 35} In this case, ERAC dismissed the appeal for lack of jurisdiction but stated that Enyeart's decision to request more information was reasonable. The court of appeals determined that ERAC erred in reaching the merits of the issue of whether Trans Rail's application was incomplete without holding a hearing. 2007-Ohio-7144, ¶ 14. That ruling is not before us.

{¶ 36} Because the court of appeals construed R.C. 3745.04(B) as providing ERAC with appellate jurisdiction to order a licensing agency to "perform an act" independently of whether the underlying decision was a final action, the court of appeals did not consider whether the board's May 31, 2006 letter was a final decision. 2007-Ohio-7144, ¶ 11. We now vacate the court of appeals' judgment on that basis, and we remand this case to the court of appeals for a determination whether Enyeart's May 31, 2006 letter determining Trans Rail's application to be incomplete was a final decision appealable to ERAC under R.C. 3745.04(B) under the criteria outlined above.[3]

**III**

2. Amicus Ohio attorney general suggests that in a proper case, mandamus would be available to compel the board of health or the director to act upon a complete application. We are not so certain, but we leave that question for another day.

3. Trans Rail contends that it had a substantial interest in obtaining a determination that its C&DD license application was complete before the new siting criteria provided in 2005 Am.Sub.H.B. No. 397 took effect. Section 3 of that act allowed applications for C&DD facilities that were submitted before July 1, 2005, and were found to be complete as of that time to be considered under the existing siting criteria rather than the more stringent criteria in H.B. 397. Under Section 3, the director of environmental protection was to determine whether the law's grandfather provision applied to a particular applicant within 45 days after having receiving the applicant's request for such a determination. Trans Rail contends that it has a substantial interest in a determination of whether its application was complete before the new siting criteria in HB 397 took effect and that therefore the decision to deem the application incomplete was appealable to ERAC. Because we are remanding to the court of appeals, we do not address this contention now.

{¶ 37} Accordingly, we hold that the court of appeals erred in concluding that Enyeart's letter that declared Trans Rail's application to be incomplete and requested further information was appealable to the Environmental Review Appeals Commission without regard to whether it was a final action of the Trumbull County Board of Health. We vacate the judgment below and remand the case to the court of appeals for a determination whether Enyeart's letter was a final decision appealable to ERAC under the criteria outlined in this opinion.

Judgment vacated<br>and cause remanded.

LUNDBERG STRATTON, O'CONNOR, and O'DONNELL, JJ., concur.

MOYER, C.J., concurs in part and dissents in part.

PFEIFER and LANZINGER, JJ., dissent.

_____

**MOYER, C.J., concurring in part and dissenting in part.**

{¶ 38} I agree with the majority's conclusion that the Environmental Review Appeals Commission ("ERAC") has jurisdiction to review only final decisions of a local board of health or the director of environmental protection, but for different reasons. I would also hold that the Trumbull County Health Department's actions in this case, refusing to consider a license application because it was incomplete, did not constitute a final decision, and, therefore, ERAC properly determined that it did not have jurisdiction to hear the appeal.

**I**

{¶ 39} The proper resolution of this case follows directly from the precise text of the statute at issue, R.C. 3745.04, which provides ERAC's appellate jurisdiction. When interpreting a statute, we first look to its plain language and apply it as written if the meaning is unambiguous. *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 9. R.C. 3745.04(B) provides: "Any person who was a party to a proceeding before the director of environmental

protection may participate in an appeal to the environmental review appeals commission for an order vacating or modifying the action of the director or a local board of health, or ordering the director or board of health to perform an act."

{¶ 40} The majority determines that this section requires a final determination by the local board of health because "ERAC's statutory authority to order the performance of an act is ancillary to ERAC's appellate jurisdiction to review final actions of a local board of health or the director of environmental protection." Majority opinion at ¶ 26. The majority's rationale in support, that this ancillary authority allows ERAC to order some act, such as issuing a license, rather than merely vacating an order, ignores the fact that ERAC could order that same act simply by modifying the original order pursuant to its primary grant of authority in R.C. 3745.04 to vacate or modify. More important, the majority's analysis belies the proper construction of the statutory text as described by the dissent. There is nothing in the statute to suggest that the second grant of authority is somehow ancillary to the first. As noted in the dissent, the conjunction "or" is used to establish two separate grants of jurisdiction.

{¶ 41} This latter construction does not, however, mean that ERAC can consider appeals without a final action by the local board of health, as the dissent contends. The first part of the sentence in R.C. 3745.04(B) providing for appeals to ERAC states that "[a]ny person who *was* a party" may appeal. (Emphasis added.) The past tense used in the statute presumes that the proceeding being appealed to ERAC has concluded, resulting in some final action by the local board of health. If the local board has not yet taken any action on a license application, for example, then the applicant would still be a party to that proceeding and he would not meet the plain text of the statutory requirement for ERAC appellate jurisdiction. R.C. 3745.04(B) does therefore require a final action by a local board of health or the director of environmental protection for a party to appeal to ERAC.

{¶ 42} Were this court to read the statute to allow appeals of nonfinal actions, the limited appeal system established by the General Assembly would be meaningless. A party could completely bypass the local board of health in favor of immediately petitioning ERAC to order the local board to perform some act. That arrangement would thwart legislative intent and put a heavy burden on the resources of ERAC.

## II

{¶ 43} A determination by a local board of health or the director of environmental protection that a license application is incomplete, as occurred in this case, cannot constitute a final action under R.C. 3745.04 so that ERAC would have jurisdiction to hear an appeal. As noted by the majority, once an application is deemed to be incomplete, the regulations require that the applicant be notified of the deficiency to allow the applicant to supplement the application. Ohio Adm.Code 3745-37-02(A)(2). The license-approval proceeding is still ongoing at this stage. The regulations specifically contemplate further consideration of an application once the deficiencies have been rectified. See id.

{¶ 44} The majority concludes that a decision of a local board of health that an application is incomplete may still be a final action "if it in effect determines any legal right or privilege of the appellant." Majority opinion at ¶ 34. But such a decision will never completely determine the applicant's legal rights because the local board will have reached no decision regarding the applicant's right to a license, and once an application's deficiencies are remedied, the application will then be considered and ruled upon.

{¶ 45} The majority further contends that a contrary holding could allow a local board or the director of environmental protection to evade review if it seeks to deny an applicant from obtaining a license by perpetually deeming the application incomplete. An aggrieved applicant could, however, file an action in mandamus to compel the local board or director to consider the application, if it is

in fact complete, and either issue or deny a license. For an action to lie in mandamus a relator must demonstrate (1) a clear legal right to the relief sought, (2) a clear legal duty of the respondent to perform the requested action, and (3) the lack of an adequate remedy at law. *State ex rel. Ohio Assn. of Pub. School Emps. v. Batavia Local School Dist. Bd. of Edn.* (2000), 89 Ohio St.3d 191, 198, 729 N.E.2d 743.

{¶ 46} R.C. 3714.051 satisfies the first two parts of the test by requiring a board of health or the director of environmental protection to issue a license for a facility for the disposal of construction and demolition debris if the proposal complies with the appropriate rules and standards. An applicant would further have no adequate remedy at law, because R.C. 3745.04 permits appeals to ERAC only of final decisions by the local board or director, as discussed above. We have held that "when a state agency's decision is discretionary and by statute not subject to appeal, an action in mandamus is the sole avenue of relief available to a party challenging the agency's decision." *Ohio Academy of Nursing Homes v. Ohio Dept. of Job & Family Servs.*, 114 Ohio St.3d 14, 2007-Ohio-2620, 867 N.E.2d 400, ¶ 32.

## III

{¶ 47} I concur in the majority's holding that R.C. 3745.04(B) requires a final action by the local board of health or director to permit an appeal to ERAC. I dissent, however, from the conclusion that a letter from a local board deeming a license application incomplete can constitute a final action and be subject to appeal. I would therefore reverse the judgment of the court of appeals.

_____

**LANZINGER, J., dissenting.**

{¶ 48} Does the Environmental Review Appeals Commission ("ERAC") have jurisdiction over Trans Rail's appeal? I would hold that it does.

{¶ 49} Appellee Trans Rail attempted to submit an application for a license for a facility for the disposal of construction and demolition debris in Trumbull County. The company argues that timing for a completed application was important because more stringent siting criteria were to take effect on July 1, 2005. It made a first submission to the health department in May 2004 but was told that the application was incomplete. Even though it submitted additional information in December 2005 and on March 30, 2006, its application was still deemed incomplete, meaning that by regulation, its application would not even be considered. Ohio Adm.Code 3745-37-02(A)(2). In other words, Trans Rail's license would not be issued or denied.

{¶ 50} The majority accepts appellant's argument that R.C. 3745.04 requires a final action of the director of environmental protection or a local board of health in order for ERAC to have jurisdiction over an appeal. Nevertheless, R.C. 3745.04(B) provides that a party may appeal to ERAC for *"an order* vacating or modifying the action of the director or a local board of health, or *ordering the director or board of health to perform an act."* (Emphasis added.)

{¶ 51} "Act" or "action" is defined in R.C. 3745.04(A):

{¶ 52} "As used in this section, *'action' or 'act' includes* the adoption, modification, or repeal of a rule or standard, *the issuance*, modification, or revocation of any lawful order other than an emergency order, and *the issuance, denial,* modification, or revocation *of a license*, permit, lease, variance, or certificate, or the approval or disapproval of plans and specifications pursuant to law or rules adopted thereunder." (Emphasis added.)

{¶ 53} R.C. 3745.04 contains no provision that ERAC has jurisdiction over final actions only, but other provisions in R.C. Title 37 suggest that when a party is appealing an action of the director or local board to ERAC, that action must be a final one. See R.C. 3704.036(B)(3)(c) (when the director approves or disapproves an administrative Title V permit amendment, the director's

17

determination "is a final action appealable to the environmental review appeals commission under section 3745.04 of the Revised Code") and 3734.05(I)(6) (the director's approval or disapproval of a Class 1 modification application "is not a final action that is appealable under Chapter 3745. of the Revised Code," but the director's approval or disapproval of a Class 2 or Class 3 modification application "is a final action that is appealable under that chapter").

{¶ 54} Even if actions of the director or local board must be final to be appealable, R.C. 3745.04 still allows a party to file an appeal requesting ERAC to order the director or board to perform an act. The plain language of the statute establishes two distinct ways in which a party may appeal to ERAC:  a party may appeal for an order "vacating or modifying the action of the director or a local board of health, *or* ordering the director or board of health to perform an act." (Emphasis added.)   R.C. 3745.04(B).   As the court of appeals explained, "the statute invests the ERAC with jurisdiction over two types of appeals: (1) an appeal from an 'action' that the ERAC may vacate or modify, and (2) an appeal requesting that the ERAC order the performance of an 'act.' " 2007-Ohio-7144, ¶ 9.

{¶ 55} The majority, however, holds that ERAC's ability to order the performance of an act is ancillary to its jurisdiction to review actions of the director or local board.  In doing so, it adds words to the statute by requiring that before a party may seek an order that the department "perform an act," there must first be "a final decision that substantially affects the applicant's property or other legal rights."  Majority opinion at ¶ 1.

{¶ 56} To accomplish this result, the majority phrases the issue before us as "whether a license applicant may appeal a determination that the license application is incomplete."   Nevertheless, as the court of appeals noted, "Trans Rail's appeal requests that the ERAC order the Health Department to either issue or deny it a license to establish a construction and demolition debris facility."

2007-Ohio-7144, ¶ 10.   Trans Rail, in effect, is asking ERAC for an order compelling the health board to act by either issuing or denying the license.  Each of these two actions is listed in the statutory definition of "act," which includes "issuance, denial, modification, or revocation of a license." R.C. 3745.04(A). Trans Rail is not asking ERAC to review a final order.  This is not a premature appeal — it is an action seeking the second type of relief that ERAC is authorized to give: an order requiring Enyeart to grant or deny a license.  The order itself, of course, is appealable according to the first type of jurisdiction provided for in R.C. 3745.04.

{¶ 57} In concluding that the second type of jurisdiction is ancillary to the first, the majority also fails to recognize the significance of the General Assembly's use of the word "or" in establishing the two types of jurisdiction given to ERAC.  By allowing for an appeal for an order "vacating or modifying the action of the director or a local board of health, *or* ordering the director or board of health to perform an act," the statute is phrased in a way that clearly states that parties may base their appeals on either the first or second type of jurisdiction provided for in R.C. 3745.04.  (Emphasis added.)  This language indicates the General Assembly's intention to give ERAC two coequal appellate powers.  Therefore, the majority is mistaken in concluding that the second type of jurisdiction is ancillary to the first.

{¶ 58} In addition, by first requiring a final decision before a party may seek an order requiring the director or board to perform an act, the majority allows undue extension of the licensing process.  A board of health or the director of environmental protection may continue to deem a license application incomplete and request additional information indefinitely.  Indeed, in this case, Trans Rail alleges that it has repeatedly complied with the requirements for its license application, yet the director persists in stating that the application is incomplete and that no ruling may be made upon it.  Unless "it is in some sense a

final decision that substantially affects the appellant's property or other legal rights," majority opinion at ¶ 31, the licensing entity's lack of decision will continue to evade appellate review under the majority's reading of R.C. 3745.04(B).

{¶ 59} Because the requirement of final action is not set forth within R.C. 3745.04 as a prerequisite for ERAC's jurisdiction in appeals requesting ERAC to order the director or board to act, I would not write it in. If the General Assembly wishes to limit the jurisdiction of ERAC in this second type of appeal, it may do so by amending the statute. I respectfully dissent and would affirm the judgment of the Tenth District Court of Appeals.

PFEIFER, J., concurs in the foregoing opinion.

_____

Morganstern, MacAdams & DeVito Co. and Michael A. Partlow, for appellee.

Ronald James Rice Co., L.P.A., and Robert C. Kokor, for appellant.

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Kimberly A. Olson, Deputy Solicitor, and Sari L. Mandel, Assistant Attorney General, urging reversal for amicus curiae state of Ohio.

Ulmer & Berne, L.L.P., Robert J. Karl, and Sherry L. Hesselbein, urging reversal for amicus curiae Hubbard Environmental and Land Preservation.

Frost Brown Todd, L.L.C., and Christopher S. Habel, urging affirmance for amicus curiae National Solid Waste Management Association.

Walter & Haverfield, L.L.P., Michael A. Cyphert, and Michael Schmeltzer, urging affirmance for amicus curiae Construction and Demolition Association of Ohio, Inc.

_____