**TRANS RAIL AMERICA, INC., Appellant,**

v.

**ENYEART, Appellee–Appellee.**

[Cite as *Trans Rail Am., Inc. v. Enyeart,* 187 Ohio App.3d 703, 2010-Ohio-3012.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 07AP–273 and 07AP–284.

Decided June 30, 2010.

Morganstern, MacAdams, & DeVito Co. and Michael A. Partlow, for appellant.

Ronald James Rice Co., L.P.A., and Robert C. Kokor, for appellee.

KLATT, Judge.

{¶ 1} This appeal originally arose from a ruling of the Environmental Review Appeals Commission ("ERAC") that it lacked jurisdiction to review the decision of Dr. James Enyeart, the Trumbull County Health Commissioner, that the application of Trans Rail America, Inc. for a license to establish a construction and demolition debris facility was incomplete. This court reversed that ruling. *Trans Rail Am., Inc. v. Enyeart*, 10th Dist. No. 07AP–273, 2007-Ohio-7144, 2007 WL 4564303 (*"Trans Rail I"*). The Supreme Court of Ohio accepted Enyeart's appeal of our decision, and it vacated our judgment. *Trans Rail Am., Inc. v. Enyeart*, 123 Ohio St.3d 1, 2009-Ohio-3624, 913 N.E.2d 948 (*"Trans Rail II"*). The Supreme Court also remanded the case to this court for us to decide "whether Enyeart's May 31, 2006 letter determining Trans Rail's application to be incomplete was a final decision appealable to ERAC under R.C. 3745.04(B)." Id. at ¶ 36. As explained below, we conclude that the letter is not a final decision.

{¶ 2} On May 21, 2004, the Trumbull County Health Department received Trans Rail's application for a license to construct a construction and demolition debris facility in Hubbard, Ohio. Enyeart reviewed the application and determined that it did not contain all the information required by Ohio Adm.Code 3745–37–02(E). In a July 16, 2004 letter, Enyeart notified Trans Rail that its application was incomplete and listed the administrative code sections that Trans Rail had not complied with.

{¶ 3} Trans Rail did not respond to Enyeart's letter until December 2005. During the 16–month period of inactivity, the General Assembly imposed a six-month moratorium on the issuance of licenses to construct construction and demolition debris facilities. This prohibition extended from July 1 to December 31, 2005, and it applied to applications submitted prior to July 1, 2005, that had not been approved before the beginning of the moratorium.

{¶ 4} Days before the moratorium ended, the General Assembly enacted Am.Sub.H.B. No. 397, which revamped the statutes governing construction and demolition debris facilities. 2005 Ohio Legis.Serv. L–2390. Significantly, Am. Sub.H.B. No. 397 increased the restrictions on where a construction and demolition debris facility could be located. R.C. 3714.03, Am.Sub.H.B. No. 397, 2005

Ohio Legis.Serv. at L–2395. In uncodified section three of Am.Sub.H.B. No. 397, the General Assembly addressed the applicability of the amended statutes to pending and future applications for construction and demolition debris licenses. 2005 Ohio Legis.Serv. at L–2423–24. It stated:

(A) Notwithstanding the amendments to Chapter 3714. of the Revised Code by this act, an application for a license to establish or modify a construction and demolition debris facility submitted to a board of health or the Director of Environmental Protection, as applicable, prior to July 1, 2005, shall be reviewed and the license shall be issued or denied in accordance with the provisions of that chapter as they existed on July 1, 2005, if all of the following apply to the applicant for the license:

(1) The applicant has acquired an interest in the property on which the facility will be located on or before May 1, 2005.

(2) The applicant has begun a hydrogeologic investigation pursuant to section 3745–400–09 of the Ohio Administrative Code prior to submitting the application.

(3) The applicant has begun the engineering plans for the facility prior to submitting the application.

(4) The application submitted by the applicant would have been determined to be complete if a moratorium had not been in effect.

The director shall determine whether this division applies to an applicant within forty-five days after receiving an applicant's request for a determination under this division.

Id. at L–2423.

{¶ 5} On December 16, 2005—approximately two weeks before the moratorium ended—CT Consultants, Inc., the engineering firm that Trans Rail had hired to oversee the application process, submitted supplemental information in response to Enyeart's July 16, 2004 letter. Enyeart forwarded the original application and the new materials to Bennett & Williams Environmental Consultants, Inc., a consulting firm that the Trumbull County Board of Health had engaged to assess Trans Rail's application. Bennett & Williams responded with a 19–page report delineating the inadequacies in the information that Trans Rail had thus far supplied. Of particular relevance to this appeal, Bennett & Williams's report noted that Trans Rail had neither requested nor received a determination from the director of the Ohio Environmental Protection Agency that the pre–Am.Sub. H.B. No. 397 law applied to its application. Bennett & Williams concluded:

Without such a determination from the director, the application is subject to the siting criteria in section 3714.03 of the Revised Code and must either demonstrate that the new siting criteria are met or revise the application to

meet the siting criteria. This application contains no such demonstration[;] therefore the siting criteria must be addressed in the application.

{¶ 6} In a February 15, 2006 letter, Enyeart notified Trans Rail that its application was still incomplete, and he attached Bennett & Williams's report. On March 30, 2006, CT Consultants and HzW Environmental Consultants, L.L.C. responded to Enyeart's letter on Trans Rail's behalf. Both CT Consultants and HzW Environmental Consultants provided corrected and additional information to address Bennett & Williams's comments and concerns. Enyeart forwarded these responses to Bennett & Williams for review. Despite the supplementary information, Bennett & Williams concluded that the application remained incomplete. In relevant part, Bennett & Williams indicated that the responses failed to address whether the proposed construction and demolition debris facility met the siting criteria contained in amended R.C. 3714.03.

{¶ 7} In a May 31, 2006 letter, Enyeart again notified Trans Rail that its application was incomplete. Instead of providing more information, Trans Rail chose to file an appeal with ERAC. In its notice of appeal, Trans Rail requested that ERAC find that Trans Rail's license application was complete and order the Trumbull County Health Department to process the application.

{¶ 8} Enyeart moved to dismiss Trans Rail's appeal, arguing that ERAC lacked jurisdiction over the appeal because the May 31, 2006 letter did not constitute a final act or action. Pursuant to R.C. 3745.04(B), a party may appeal to ERAC "for an order vacating or modifying the action of the director or a local board of health, or ordering the director or board of health to perform an act." R.C. 3745.04(A) defines "act" or "action" to "include[ ] the adoption, modification, or repeal of a rule or standard, the issuance, modification, or revocation of any lawful order other than an emergency order, and the issuance, denial, modification, or revocation of a license, permit, lease, variance, or certificate, or the approval or disapproval of plans and specifications pursuant to law or rules adopted thereunder." Enyeart contended that the May 31, 2006 letter did not meet this statutory definition, did not contain the traditional indicia of a final action, and did not adjudicate with finality any legal rights. Consequently, Enyeart maintained that ERAC's jurisdictional authority did not extend to a review of the letter.

{¶ 9} ERAC agreed with Enyeart and dismissed Trans Rail's appeal. Interpreting R.C. 3745.04(B), ERAC held that a decision that does not constitute a final action of the director or a board of health cannot form the jurisdictional basis for an appeal to it. The ERAC recognized that the list of actions contained in R.C. 3745.04(A) is not exhaustive and that a decision can be a final action if it adjudicates with finality any legal right or privilege of the appealing party. Although ERAC acknowledged that a licensing entity's repeated, unreasonable

requests for additional information can result in a final action, it found that Enyeart was reasonable in deeming the application incomplete and seeking more information from Trans Rail. ERAC thus concluded that the May 31, 2006 letter was not a final action but, rather, an intermediate step in a continuing process.

{¶ 10} Trans Rail appealed ERAC's dismissal of its appeal to this court. We held that the ERAC's jurisdiction did not always turn upon whether or not the aggrieved party was appealing from a final action. *Trans Rail I*, 2007-Ohio-7144, 2007 WL 4564303, at ¶ 11. We concluded that R.C. 3745.04(B) invested ERAC with jurisdiction over two types of appeals: (1) an appeal from an "action" that ERAC could vacate or modify and (2) an appeal requesting that ERAC order the performance of an "act." Id. at ¶ 9. Because Trans Rail sought an order requiring the performance of an "act," i.e., the issuance or denial of a license, Trans Rail's appeal fit within the latter category of appeals, and ERAC had jurisdiction to review it. Id. at ¶ 10.

{¶ 11} Enyeart appealed our decision to the Supreme Court of Ohio, which disagreed with our interpretation of R.C. 3745.04(B). The Supreme Court held that R.C. 3745.04(B) limited ERAC's jurisdiction solely to the review of final actions of the director and local boards of health. Turning to the question of what kind of decision constitutes a final action, the Supreme Court held that an aggrieved party can appeal a decision if "it is in some sense a final decision that substantially affects the appellant's property or other legal rights, even if it is not designated as final." *Trans Rail II*, 123 Ohio St.3d 1, 2009-Ohio-3624, 913 N.E.2d 948, at ¶ 31. The court added that generally, "a decision that an application is incomplete, accompanied by a specification of the precise nature of the deficiencies and a reasonable request for additional information, will not be a final act or action of the licensing agency." Id. at ¶ 33. However:

> [T]he requirement of a final decision does not mean that the licensing entity (a board of health or the director of environmental protection) can evade appellate review under R.C. 3745.04(B) simply by deeming a license application incomplete and repeatedly and unreasonably requesting additional information before the licensing entity will consider the application on its merits.

Id. at ¶ 34. An ongoing pattern of ruling an application incomplete, while unreasonably requesting additional information, amounts to a de facto denial of the application, which in turn qualifies as a determination that substantially affects the appellant's property and legal rights.

{¶ 12} Now before this court on remand, Trans Rail's appeal presents this court with one question: Did Trans Rail base its appeal to ERAC upon a final action? To answer this question, we must consider whether the May 31, 2006 letter substantially affected Trans Rail's property or legal rights.

{¶ 13} In its supplemental briefing to this court, Trans Rail asserts two arguments. First, Trans Rail contends that the May 31, 2006 letter substantially affected its legal rights because the letter foreclosed its right to take advantage of the grandfather clause contained in Am.Sub.H.B. No. 397. As we explained above, in uncodified section 3(A) of Am.Sub.H.B. No. 397, the General Assembly specified that license applications filed prior to July 1, 2005, are subject to the provisions of R.C. Chapter 3714 as they existed on July 1, 2005, if the applicant satisfies four criteria. To meet the fourth criterion, an applicant must demonstrate that the licensing entity would have determined that the application was complete if the moratorium had not been in effect. The moratorium ended on December 31, 2005. Therefore, to have its application considered under pre–Am.Sub.H.B. No. 397 law, Trans Rail must show that Enyeart would have found its application, as it existed on December 31, 2005, to be complete. Trans Rail argues that Enyeart's May 31, 2006 letter negates its ability to make the necessary showing, and thus, the letter substantially affects its right to rely on pre–Am.Sub.H.B. No. 397 law.

{¶ 14} The May 31, 2006 letter, however, did not have any bearing upon whether Trans Rail's application was complete as of December 31, 2005. Enyeart announced his determination regarding the application's completeness as of that date in his February 15, 2006 letter. Thus, the February 15, 2006 letter—not the May 31, 2006 letter—substantially affected Trans Rail's asserted right to have its application adjudged under the law that existed when Trans Rail originally filed it. Because the May 31, 2006 letter did not affect Trans Rail's asserted right to pre–Am.Sub.H.B. No. 397 law, Trans Rail's first argument fails.

{¶ 15} Second, Trans Rail argues that the May 31, 2006 letter substantially affected its property and legal rights because the letter equated to a denial of its license application. A decision to deem a license application incomplete, in conjunction with repeated and unreasonable requests for additional information, is tantamount to a denial of the application. Because a de facto denial substantially affects an applicant's property and legal rights, it is a final action.

{¶ 16} Here, ERAC concluded that Enyeart had acted reasonably in determining that Trans Rail's application was incomplete. ERAC also concluded that Enyeart's requests for additional information and clarification were reasonable. We agree with both conclusions. Significantly, the record is devoid of any evidence that Trans Rail sought and achieved a determination from the director that pre–Am.Sub.H.B. No. 397 law applies to its application. Accordingly, the amended statutes, including amended R.C. 3714.03, govern Trans Rail's application. As the ERAC found, and Trans Rail does not contest, Trans Rail's application fails to address the new siting criteria contained in amended R.C. 3714.03. Without information regarding whether the proposed construction and

demolition debris facility satisfies all the siting criteria, the application remains incomplete. Enyeart's request that Trans Rail supply the necessary information constitutes reasonable enforcement of R.C. 3714.03, not an unreasonable attempt to avoid making an official decision on Trans Rail's application. The May 31, 2006 letter, therefore, is not a de facto denial of Trans Rail's application.

{¶ 17} Based upon the foregoing, we hold that the May 31, 2006 letter is not a final action, and we affirm the order of the Environmental Review Appeals Commission.

Order affirmed.

TYACK, P.J., and FRENCH, J., concur.