GIRARD BOARD OF HEALTH, Appellant,

v.

KORLESKI, Dir., et al., Appellees.

[Cite as *Girard Bd. of Health v. Korleski*, 193 Ohio App.3d 309, 2011-Ohio-1385.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–484.

Decided March 24, 2011.

310

Blair & Latell Co., L.P.A., and Kurt D. Latell; and Mark M. Standohar, for appellant.

BROWN, Judge.

{¶ 1} This is an appeal by appellant, the Girard Board of Health, from an order of the Environmental Review Appeals Commission ("ERAC") dismissing, for lack of standing, appellant's appeal from a determination by the director of the Ohio Environmental Protection Agency.

{¶ 2} On June 9, 2005, appellee, Total Waste Logistics Girard, L.L.C. ("TWL"), submitted to appellant a license application to establish a new construction-and-demolition-debris ("C & DD") facility in the city of Girard. On December 14, 2005, the Ohio General Assembly enacted Am.Sub.H.B. No. 397, effective December 22, 2005, as an emergency measure. The bill, which amended the state's C & DD statutes under R.C. Chapter 3714, ended a moratorium on the issuance of C & DD licenses that had begun on July 1, 2005. Uncodified Section 3(A) of the bill also allowed certain license applications to be grandfathered under the C & DD regulations as they existed on July 1, 2005, if the applicant satisfied specific criteria.

{¶ 3} On April 3, 2006, URS Corporation ("URS"), on behalf of TWL, submitted a request to the Ohio Environmental Protection Agency ("Ohio EPA") for a director's determination as to whether uncodified Section 3(A) of Am.Sub.H.B. No. 397 applied to TWL's license application. On December 19, 2006, the director of the Ohio EPA issued a determination letter to URS, stating that the Ohio EPA had reviewed the request and determined that Section 3(A) applied to TWL, and therefore the license application "shall be issued or denied in accordance with the provisions of Ohio Revised Code (ORC) Chapter 3714 as they existed on July 1, 2005." The letter further provided that the action of the director was final and "may be appealed to the Environmental Review Appeals Commission * * * pursuant to ORC Section 3745.04." The letter indicated that copies were sent to two Ohio EPA employees, as well as to the "Girard Health Department."

{¶ 4} On January 24, 2007, appellant filed a notice of appeal with ERAC from the director's determination that uncodified Section 3(A) of Am.Sub.H.B. No. 397 applied to TWL's application. On February 6, 2007, TWL filed a notice of appearance and an answer. On February 7, 2007, the director filed a motion to dismiss the appeal of appellant, asserting that ERAC lacked jurisdiction because the notice of appeal was untimely. On February 23, 2007, the director withdrew the motion to dismiss.

{¶ 5} On March 5, 2007, TWL filed with ERAC a motion to dismiss the appeal of appellant, asserting that the notice of appeal was not timely filed. On March 27, 2007, appellant filed a memorandum in opposition to TWL's motion to dismiss. On April 2, 2007, TWL filed a reply to appellant's memorandum in opposition.

ERAC filed a ruling on May 8, 2007, denying TWL's motion to dismiss. On May 25, 2007, TWL filed a motion for clarification of ERAC's ruling. On August 16, 2007, ERAC issued a ruling denying TWL's motion for clarification.

{¶ 6} On January 11, 2010, TWL filed a motion with ERAC to reconsider its order denying TWL's motion to dismiss. TWL asserted that the appeal should be dismissed on the grounds that appellant's notice of appeal was not timely filed, pursuant to R.C. 3745.07, and that R.C. 3745.04 was not applicable, because appellant was not a party to the director's determination. On January 14, 2010, appellant filed a memorandum in opposition to TWL's motion to reconsider.

{¶ 7} On January 19, 2010, ERAC issued a notice that it had determined to grant TWL's motion to reconsider and to grant dismissal of the matter. On April 2, 2010, appellant filed a request with ERAC to issue a final order.

{¶ 8} On April 21, 2010, ERAC issued a decision, including findings of facts and conclusions of law, on the motion to reconsider the order denying TWL's motion to dismiss. As to the issue of standing, ERAC first determined that appellant's "submission of documents and information to the Ohio EPA satisfies the requirement that the Board of Health appeared before the Director and presented arguments in writing or otherwise regarding TWL's request to the Director for a determination under uncodified Section 3(A)." While ERAC found that appellant appeared before the director, ERAC rejected appellant's claim that it had been affected or injured by the director's determination, and therefore concluded that appellant lacked standing. ERAC thus granted TWL's motion to reconsider and its motion to dismiss.

{¶ 9} On appeal, appellant sets forth the following assignment of error for this court's review:

The Environmental Review Appeals Commission (ERAC) erred in finding that appellant Girard Board of Health was not "affected" by the OEPA director's determination issued pursuant to uncodified Section 3(A) of Am. Sub. H.B. 397 and thereby finding that appellant Girard Board of Health lacked standing to appeal said director's determination.

{¶ 10} Under its single assignment of error, appellant argues that ERAC erred in finding that it lacked standing to appeal. More specifically, appellant argues that ERAC erred in concluding that appellant was not affected by the director's determination that uncodified Section 3(A) of Am.Sub.H.B. No. 397 applied to TWL's C & DD license application.

{¶ 11} R.C. 3745.06, which grants to an affected party the right to appeal an order of the director of the Ohio EPA, states:

The court shall affirm the order complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has

admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it shall reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.

{¶ 12} Pursuant to R.C. 3745.04(B), "[a]ny person who was a party to a proceeding before the director of environmental protection may participate in an appeal to the environmental review appeals commission for an order vacating or modifying the action of the director." In interpreting the above provision, this court has held that the statutory language " 'party to a proceeding before the director' encompassed 'any person affected by the proposed action who appears in person, or by his attorney, and presents his position, arguments, or contentions orally or in writing, or who offers or examines witnesses or presents evidence tending to show that said proposed rule, amendment or rescission, if adopted or effectuated, will be unreasonable or unlawful.' " *Stark–Tuscarawas–Wayne Joint Solid Waste Mgt. Dist. v. Republic Waste Servs. of Ohio II, L.L.C.*, 10th Dist. No. 07AP–599, 2009-Ohio-2143, 2009 WL 1263623, ¶ 22, quoting *Cincinnati Gas & Elec. Co. v. Whitman* (Nov. 19, 1974), 10th Dist. No. 74AP–151, 1974 WL 184438.

{¶ 13} The question of standing is "a threshold jurisdiction issue that must be resolved before an appellant may proceed with an appeal to ERAC." *Helms v. Koncelik,* 10th Dist. No. 08AP–323, 2008-Ohio-5073, 2008 WL 4416529, ¶ 22, citing *New Boston Coke Corp. v. Tyler* (1987), 32 Ohio St.3d 216, 217, 513 N.E.2d 302. We employ "a two-prong test to determine whether a person is a party [for purposes of R.C. 3745.04]. First, did the person appear before the director, presenting his arguments in writing or otherwise; and, second, was the person 'affected' by the action or proposed action." *Martin v. Schregardus* (Sept. 30, 1996), 10th Dist. No. 96APH04–433, 1996 WL 550184.

{¶ 14} In the instant case, in addressing the issue of standing, ERAC found that appellant satisfied the first prong in determining whether it was a party to a proceeding before the director, i.e., ERAC concluded that appellant appeared before the director and presented its arguments in writing or otherwise. Appellant correctly notes that TWL has not challenged, by way of appeal, the director's determination as to this issue.

{¶ 15} Thus, the sole issue on appeal is whether ERAC erred in finding that appellant failed to satisfy the second prong of the test. This court has held that "[a] proposed action 'affects' a party if (1) the challenged action will cause injury in fact, economic or otherwise, and (2) the interest sought to be protected is within the realm of interests regulated or protected by the statute being challenged." *Citizens Against Megafarm Dairy Dev., Inc. v. Dailey,* 10th Dist.

No. 06AP–836, 2007-Ohio-2649, 2007 WL 1560209, ¶ 7, citing *Olmsted Falls v. Jones,* 152 Ohio App.3d 282, 2003-Ohio-1512, 787 N.E.2d 669, citing *Franklin Cty. Regional Solid Waste Mgt. Auth. v. Schregardus* (1992), 84 Ohio App.3d 591, 617 N.E.2d 761. Furthermore, "[t]he alleged injury must be concrete, rather than abstract or suspected," and "[a] party must show that he or she will suffer a specific injury, even slight, from the challenged action or inaction, and that the injury is likely to be redressed if the court invalidates the action or inaction." *Citizens Against Megafarm Dairy* at ¶ 7.

{¶ 16} In asserting that it was affected by the director's determination, appellant relies in part upon this court's decision in *Stark–Tuscarawas–Wayne,* 2009-Ohio-2143, 2009 WL 1263623 Under the facts of that case, the appellee, Republic Waste Services of Ohio II, L.L.C. ("Republic"), submitted an application for a permit to install ("PTI") a 170–acre expansion to an existing municipal solid-waste landfill. The Ohio EPA issued a final recommendation for approval, and the appellant, Stark–Tuscarawas–Wayne Joint Solid Waste Management District, appealed the director's final action to ERAC. Republic filed a motion to dismiss the district's appeal for lack of standing, which ERAC denied.

{¶ 17} On appeal, Republic argued that ERAC erred in denying its motion to dismiss the district for lack of standing. In response, the district argued that it would be "affected" or "aggrieved" by the issuance of a PTI because expansion of the landfill was at odds with its principal statutory duty under R.C. 3734.52(A) of " 'providing for * * * the safe and sanitary management of solid wastes within all of the incorporated and unincorporated territory of the * * * district.' " *Stark–Tuscarawas–Wayne* at ¶ 46.

{¶ 18} In *Stark–Tuscarawas–Wayne* at ¶ 49–50, this court found that ERAC did not err, as a matter of law, in concluding that the district had standing to appeal the director's final action to ERAC, holding:

Upon review of the District's evidence and this court's prior decisions, we conclude that the District has established that it has standing to appeal to ERAC. The District presented expert testimony that fractures beneath the landfill provide a pathway for contaminants to the aquifer and that Republic's investigation regarding these fractures was insufficient to assure compliance with pertinent Ohio Administrative Code regulations. Such evidence demonstrates that there is a real potential that the expansion will endanger the District's residents and environment and consequently compromise the District's statutory duty to ensure the safe and sanitary management of solid waste within the District.

* * * [T]he District has provided evidence of threatened injury to the District's residents and environment which, when viewed in its totality, supports a finding that the District has or will suffer an "injury in fact" for

purposes of establishing its standing to appeal to ERAC. We also find *Citizens Against MegaFarm [Megafarm] Dairy [Dev., Inc. v. Dailey,* 10th Dist. No. 06AP–836, 2007-Ohio-2649, 2007 WL 1560209] persuasive. As here, the concern in that case was possible contamination of the water supply. We concluded that, although the threat of contamination to the citizens' wells was slight, the danger was nonetheless realistic. Here, both [experts] Fisher and Dr. Leap testified that groundwater contamination was a realistic possibility via the interconnection of fractured bedrock beneath the landfill. As noted, Fisher deemed the consequences of the travel of groundwater through the fractures to be "critical." Further, as in *Citizens,* the District challenged the Director's action regarding compliance with the aquifer siting criteria and the Director's investigation and consideration of the risk of groundwater contamination resulting from the fractured bedrock beneath the landfill expansion.

{¶ 19} In the instant case, appellant argues that it is statutorily empowered to issue licenses and enforce the rules and regulations associated with C & DD landfills. See R.C. 3714.09. Further, pursuant to R.C. 3709.20(A), it is authorized to "make such orders and regulations as are necessary * * * for the public health, the prevention or restriction of disease, and the prevention, abatement, or suppression of nuisances."

{¶ 20} Appellant notes that the director's determination being appealed in this case is authorized by uncodified Section 3(A) of Am.Sub.H.B. No. 397, which provides that a C & DD license application filed before July 1, 2005, is to be reviewed under C & DD provisions as they existed on July 1, 2005, if certain criteria are met. Specifically, Section 3(A) of Am.Sub.H.B. No. 397 states:

Notwithstanding the amendments to Chapter 3714. of the Revised Code by this act, an application for a license to establish or modify a construction and demolition debris facility submitted to a board of health or the Director of Environmental Protection, as applicable, prior to July 1, 2005, shall be reviewed and the license shall be issued or denied in accordance with the provisions of that chapter as they existed on July 1, 2005, if all of the following apply to the applicant for the license:

(1) The applicant has acquired an interest in the property on which the facility will be located on or before May 1, 2005.

(2) The applicant has begun a hydrogeologic investigation pursuant to section 3745–400–09 of the Ohio Administrative Code prior to submitting the application.

(3) The applicant has begun the engineering plans for the facility prior to submitting the application.

(4) The application submitted by the applicant would have been determined to be complete if a moratorium had not been in effect.

The director shall determine whether this division applies to an applicant within forty-five days after receiving an applicant's request for a determination under this division.

151 Ohio Laws, Part III, 5446.

{¶ 21} As indicated under the facts, TWL submitted its license application to establish a new C & DD facility on June 9, 2005. On July 1, 2005, the Ohio General Assembly imposed a six-month moratorium on the issuance of licenses to construct such facilities. See *Trans Rail Am., Inc. v. Enyeart*, 187 Ohio App.3d 703, 2010-Ohio-3012, 933 N.E.2d 349, ¶ 3. The prohibition extended from July 1 to December 31, 2005, "and it applied to applications submitted prior to July 1, 2005, that had not been approved before the beginning of the moratorium." Id. Days before the moratorium ended, the General Assembly enacted Am.Sub.H.B. No. 397, which "revamped the statutes governing construction and demolition debris facilities" and "increased the restrictions on where a construction and demolition debris facility could be located." Id. at ¶ 4.

{¶ 22} Appellant notes that the new C & DD laws were passed as an emergency measure "necessary for the immediate preservation of the public peace, health, and safety." Uncodified Section 5 of Am.Sub.H.B. No. 397, 151 Ohio Laws, Part III, 5449. Appellant further notes that it identified 67 deficiencies in TWL's license application and deemed it incomplete. According to appellant, many of those deficiencies would create a substantial risk of injury to the citizens of Girard and the environment. In this respect, appellant's expert, Linda Aller, a principal geologist with Bennett & Williams Environmental Consultants, Inc., submitted a letter, dated August 7, 2005, to the Girard Health Department. The letter, which listed specific deficiencies in TWL's application, included the following summary of the review findings:

[T]he Applicant has not provided information that demonstrates that the site does not need a liner. The Applicant has not provided sufficient data and information to demonstrate that the uppermost aquifer consists only of the bedrock and does not also include the overlying saturated and gravel deposits. Further, the applicant has not provided sufficient data to demonstrate that ground-water monitoring is not required. No financial assurance information has been provided.

In addition, there are questions about the site and the 100–year floodplain designation. Air and surface water discharge permits or applications are not provided. Potential permitting requirements for water quality and surface water have not been addressed. Wetland evaluations have not been provided. Designs for leachate collection outside the fill areas have not been completed. The leachate recirculation plan is inadequate. Leachate generation models have not been properly set up. Slope stability analyses are incomplete.

Locations of proposed buildings/structures are not shown. There appear to be errors in the application due to "cut and pasting" from previous applications at other sites.

{¶ 23} Appellant contends that as a board of health statutorily mandated to protect the public health and environment within its jurisdiction, it is affected when the director issues a determination that the older, less stringent and less protective C & DD landfill laws apply to TWL's license application, as opposed to the new C & DD laws that the legislature has deemed "necessary for the immediate preservation of public peace, health, and safety." In addition to citing its statutory duty of ensuring the safety of all residents and the environment within its jurisdiction, appellant has identified specific health and environmental concerns with TWL's application that could potentially have an adverse impact on the district, including concerns related to ground-water monitoring, the prevention of leachate discharge into a local river, and inadequate information regarding soil-liner requirements. Thus, similar to the district in *Stark–Tuscarawas–Wayne,* appellant has cited evidence/deficiencies that have a "real potential" for environmental harm that could "compromise [appellant's] statutory duty" to protect the health, safety, and welfare of its citizens. *Stark–Tuscarawas–Wayne,* 2009-Ohio-2143, 2009 WL 1263623, at ¶ 49. We agree with appellant that it has alleged sufficient injury in fact that threatens a protected interest and that it should be afforded the opportunity to present evidence before ERAC as to whether the director abused its discretion in finding that TWL satisfied the requirements of uncodified Section 3(A) of Am.Sub.H.B. No. 397. Finding that appellant has standing to challenge the director's determination, we therefore conclude that ERAC erred, as a matter of law, in dismissing appellant's appeal.

{¶ 24} Based upon the foregoing, appellant's single assignment of error is sustained, the order of ERAC is reversed, and this matter is remanded to the commission for further proceedings in accordance with law and consistent with this decision.

Order reversed
and cause remanded.

FRENCH and CONNOR, JJ., concur.